**George W. ENDICOTT, Plaintiff-Appellant,**

v.

**A. M. HUDDLESTON et al., Defendants-Appellees.**

**No. 80–1066.**

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1980.

Decided Aug. 15, 1980.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 25, 1980.

---

James M. Drake, Springfield, Ill., for plaintiff-appellant.

Paul M. Caldwell, Benton, Ill., for defendants-appellees.

Before SWYGERT, Circuit Judge, KILKENNY, Senior Circuit Judge,* and WOOD, Circuit Judge.

SWYGERT, Circuit Judge.

At issue in this appeal is whether plaintiff-appellant George W. Endicott, the former Supervisor of Assessments for Pulaski County, Illinois, was as a result of not being reappointed the victim of a due process violation or a conspiracy to violate his First Amendment rights. We hold that while Endicott did suffer a procedural due process violation when he received an inadequate hearing on the reasons for his termination, that wrong was remedied by a second hearing. He is entitled to recover damages only for the injuries he sustained in the interim.

I

Plaintiff Endicott was appointed to the office of Supervisor of Assessments of Pulaski County pursuant to Ill.Rev.Stat. ch. 120, § 484a, which provides:

> In counties containing less than 1,000,000 inhabitants and not having an elected board of assessors, the office of supervisor of assessments or county assessor, shall be filled by appointment by the county board, as herein provided.
>
> To be eligible for appointment a person . . . must have passed an examination conducted by the Department [of Local Government Affairs] to determine his competence to hold such office. . . Appointment shall be made of one of the 3 persons attaining the highest grades in the examination. . . . The term of office shall be 4 years from the date of appointment and until a successor is appointed and qualified.

Of the persons seeking appointment to the position of Supervisor of Assessments for Pulaski County in 1970, Endicott, a Democrat, was the only applicant who passed the examination. He was appointed by the Board of County Commissioners (the "County Board") to the post for the statutory four-year term beginning October 1, 1970.

Under Ill.Rev.Stat. ch. 120, § 490, the County Board also constitutes the County Board of Review, which reviews assessments made by the Supervisor. At the time of Endicott's appointment the County Board was comprised of one Republican, defendant-appellee A. M. Huddleston, and two Democrats. In addition, defendant-appellee Byron Connell, the State's Attorney and legal advisor to the County Board, was a Republican. Two months after plaintiff's appointment, another Republican, defendant-appellee Henry Schnaare, was elected to replace one of the two Democrats on the Board.

Shortly after his appointment as Supervisor, Endicott developed and implemented a

---

* The Honorable John F. Kilkenny, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

four-year plan for the assessment of all real estate in the county. Over the course of his term in office, hundreds of property owners appealed directly to the County Board, in its capacity as Board of Review, for reductions in the new assessments on their property. In as many as eighty percent of these cases, the Board issued Certificates of Error, thereby reducing the assessments on those parcels. Endicott consistently disputed the Board's power to issue Certificates of Error regarding his judgments as to the valuation of property.

In October 1972 County Board members Huddleston and Schnaare met privately with State's Attorney Connell to discuss removal of Endicott from his position as Supervisor. Connell told Huddleston and Schnaare that it would be easier to let Endicott serve out his term and not reappoint him, rather than try to remove him from office during his term.[1]

In April 1974 defendant-appellee Donald R. Miller joined Huddleston and Schnaare on the Board, so that all members were then Republicans. On June 28, 1974, these defendants, as members of the County Board, determined not to reappoint Endicott as Supervisor of Assessments. State's Attorney Connell prepared a notice informing Endicott that his term would expire on September 30, 1974, and that, upon request, he would receive a public hearing as to why he would not be reappointed. Endicott did request a hearing, and the Board members determined that the hearing would take place on September 30, 1974, the last day of Endicott's term. With the advice of Connell, the County Board members established procedural guidelines for the hearing contrary to those requested by the plaintiff. No evidence was to be presented by either side. No witnesses were to testify, so that there was to be no opportunity to cross-examine any witness or Board member. No court reporter was to be present. While Endicott and the Board were to have the right to counsel at the hearing, there were to be no opening or closing statements or interrogations by counsel. In accordance with these guidelines, Endicott's hearing consisted exclusively of the reading and public distribution of a written resolution enacted by the County Board which listed its eleven purported reasons for not reappointing him. Among these were the following:

4. That the Supervisor of Assessments allowed conflicts of interest to develop between his office and the assessment work therein involved, due to political considerations, particular persons involved, and his duties as an agent of Mutual Insurance companies, resulting, in many instances, in discriminatory assessments.

7. That he failed to properly notify many tax payers of an increase in assessment, and used deceptive practices in notifying many others, by stating the "Old Assessment" at a multiplied figure, and the "New Assessment" at an un-multiplied figure, so that the increase would appear to be much less than it actually was.

Dissatisfied with his hearing, Endicott filed suit in the Circuit Court of Pulaski County seeking a writ of mandamus to order the County Board members to conduct a "meaningful" public hearing. The Circuit Court dismissed his complaint, but the Illinois Appellate Court reversed, holding that the hearing must include "the right to appear and give evidence and the right to hear and examine witnesses whose testimony is presented by opposing parties." *People ex rel. Endicott v. Huddleston*, 34 Ill. App.3d 799, 803, 340 N.E.2d 662, 665 (1975).

Following receipt of the opinion of the Illinois Appellate Court, the County Board provided plaintiff with a second hearing in August 1977, almost three years after he had last held office. By this time, defend-

---

1. The reappointment section of Ill.Rev.Stat. ch. 120, § 484a, provides:

 If the county board does not intend to reappoint an incumbent, it shall so notify him not more than 120 nor less than 90 days before the expiration of his term. Upon request of the incumbent, the county board shall grant him a public hearing on the question of why he is not to be reappointed.

ants Schnaare and Miller were no longer members of the County Board and were not present at the second hearing.[2] Huddleston was still a member of the Board but was not at the hearing because he was hospitalized. State's Attorney Connell participated in the second hearing and presented the same eleven reasons for not reappointing Endicott. Again, the Board presented no evidence or witnesses to substantiate these reasons. Endicott's attorney was allowed, however, to make a statement on behalf of his client and could call witnesses and adduce evidence. In his opening remarks, Endicott's attorney said that he would call only his client as a witness because Endicott had indicated he would be satisfied with his public hearing if he could make several statements. Endicott testified that he had not been reappointed to his office because of a misunderstanding between State's Attorney Connell and himself as to the procedure for determining the assessed valuation of property in the county. He did not suggest that the Board had been politically motivated in its decision not to reappoint him. After this second hearing, Endicott took no further action in state court.

In May 1976, more than a year before his second hearing, plaintiff filed the instant suit in the United States District Court for the Southern District of Illinois. His complaint alleged that defendants Huddleston, Schnaare, Miller, and Connell, both as individuals and as County Board members and State's Attorney, violated the plaintiff's rights of free speech, expression, and association under the First and Fourteenth Amendments to the United States Constitution and violated 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Specifically, Endicott alleged that the defendants conspired to prevent him from performing his official duties, to damage his reputation, and to remove him from office, all because he was a member of the Democratic party. Further, plaintiff alleged that their acts deprived him of a property right or interest by removing him from office without due process of law.[3] Plaintiff also requested compensatory damages,[4] punitive damages, costs, and attorney's fees.

The case was tried to a jury which returned a verdict for the plaintiff. In answering special interrogatories, the jury found the defendants had conspired to violate Endicott's rights of freedom of political speech, expression, and association; that all defendants, under color of law, had deprived Endicott of a property right or interest without due process of law; and that the defendants' acts and conduct were done maliciously, wantonly, or oppressively. The jury awarded Endicott $25,000 in compensatory damages and $37,500 in punitive damages. The district court, however, set aside the jury verdicts, entering judgment notwithstanding the verdict in favor of the defendants.

In reaching its decision, the district court held that plaintiff had no property interest in continued employment, but was entitled only to his one four-year term and the requested public hearing. The court found that Endicott received a meaningful public hearing in August 1977. Because Illinois law made no mention of a time limit, the court concluded that this second hearing, when granted, provided all process that was due, and that its lateness did not entitle plaintiff to reappointment. The memoran-

---

2. Schnaare and Miller were replaced by Democrats.

3. Paragraph 17 of the amended complaint alleged that the defendants
 have publicized charges against him [plaintiff], all of which are untrue, which have damaged the plaintiff in his good name and reputation, and the defendants have not permitted the plaintiff to show the falsity of said charges up to the present time. These acts constitute a deprivation of the plaintiff's property without due process of law, and

constitute a violation of the Fourteenth Amendment to the Constitution of the United States, and a violation of 42 U.S.C. Sections 1983 and 1985.

4. While the amended complaint originally alleged that plaintiff was entitled to compensatory damages because of injury to his reputation, at trial plaintiff's counsel admitted that there was no proof of such injury. All allegations of actual damage to reputation were dismissed on motion of the plaintiff.

dum opinion did not analyze the question of a denial of Endicott's liberty interest, simply stating that he had failed to show that he was deprived of any liberty or property interest protected by the Fourteenth Amendment.

Regarding the claim of political conspiracy, the district court was unable to perceive "even a scintilla of evidence" that the County Board's decision not to reappoint Endicott was in retaliation for the exercise of his First Amendment rights. The court considered the entire incident the result of a clash of personality and philosophy.

In overturning the jury's verdict, the district court further ordered that if its judgment was vacated or set aside by this court, the defendants should be granted a new trial. From the district court's judgment notwithstanding the verdict and alternative grant of a new trial, the plaintiff brings this appeal.

## II

*Property Interest*

■ We agree with the district court that the plaintiff had no property interest in continued employment as Supervisor of Assessments. Property interests are created and their dimensions are defined by existing rules or understandings stemming from a source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Here the state law did not support a claim of entitlement.[5] Illinois law guaranteed plaintiff only one four-year term. The statute in no way intimates that an incumbent is granted tenure or has any entitlement to further employment. Instead, it suggests that the question of reappointment is left entirely to the discretion of the County Board.

■ Plaintiff invokes the provision granting the incumbent a public hearing on the question of why he is not to be reap-

pointed and claims that it entitles him to continued employment absent "sufficient cause." As the Illinois Appellate Court stated, the purpose of that public hearing, however, is to provide to the incumbent whom the Board has chosen not to reappoint an opportunity to preserve his reputation, while allowing the public to gain insight to the administrative and political processes of local government. *People ex rel. Endicott v. Huddleston*, 34 Ill.App.3d at 804, 340 N.E.2d at 666. The hearing does not provide the incumbent the opportunity to save his job.

■ The right to a public hearing provided by Illinois law is not itself a property interest under the Fourteenth Amendment. Not every interest accorded by state law is a "property" interest within that Amendment's meaning. *Coe v. Bogart*, 519 F.2d 10, 12 (6th Cir. 1975). The Fourteenth Amendment does not constitutionalize the violation of every right granted by state laws, but instead "only those . . . which [deprive] a person of some right secured by the Constitution or laws of the United States." *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

■ Nor did Pulaski County have a *de facto* tenure program on which plaintiff could have legitimately relied. *Perry v. Sindermann*, 408 U.S. 593, 599–600, 92 S.Ct. 2694, 2698–2699, 33 L.Ed.2d 570 (1972). While he may have anticipated continued employment, a mere subjective expectancy of reappointment on the part of the plaintiff is not protected by procedural due process. *Id.* at 603, 92 S.Ct. at 2700.

*Conspiracy*

■ Though plaintiff had no property interest in continued employment and the Board could have chosen not to reappoint him for no reason whatever, it could not have denied him further employment be-

---

**5.** Ill.Rev.Stat. ch. 120, § 484a:
The term of office shall be 4 years from the date of appointment and until a successor is appointed and qualified.

. . . . . .

. . . If the county board does not intend to reappoint an incumbent, it shall so notify him not more than 120 nor less than 90 days before the expiration of his term.

cause of his exercise of constitutionally protected First Amendment rights. *Perry v. Sindermann*, 408 U.S. at 597, 92 S.Ct. at 2697. We agree with the district court that the plaintiff has failed to adduce sufficient evidence of a political conspiracy on the part of the defendants. Initially the burden is on the plaintiff to show that his conduct was constitutionally protected, and that the protected conduct was a motivating factor in the Board's decision not to rehire him. *Mount Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Only if the plaintiff makes the required threshold showing does the burden shift to the Board to show by a preponderance of the evidence that it would not have rehired the plaintiff even in the absence of the protected conduct. *Id.*

In the instant case, all Endicott has shown is that he is a Democrat and that the defendants are Republicans, that there were numerous conflicts between himself and the Board, and that as early as 1972 two of the defendant Board members wished to remove him from office.[6] Even drawing all reasonable inferences from the evidence viewed in the light most favorable to plaintiff, we conclude there was insufficient evidence from which a jury could find that the defendants' actions were motivated by political considerations.

*Liberty Interest*

One of the eleven reasons for non-reappointment made public at Endicott's first requested hearing suggested that his assessments were often discriminatory because they were influenced by his outside business activities, by political considerations, and by his feelings toward particular property owners.[7] That charge assuredly impugns

the plaintiff's honesty and integrity. It says to the citizens of his community that Endicott's assessments of their property often were influenced by his personal concerns and prejudices. On its face, it alleges that plaintiff was guilty of reprehensible conduct.

Another of the Board's reasons states that plaintiff "used deceptive practices" to notify many taxpayers of increases in their assessments. While the language of that charge does not explicitly allege an intent to deceive taxpayers, members of the public might easily so construe the statement. It, too, suggests dishonesty or immorality.

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court said in dictum that where the state makes charges of dishonesty or immorality against a nontenured employee in declining to rehire him, the employee's liberty interest is implicated, and he is entitled to notice and an opportunity to be heard. 408 U.S. at 573, 92 S.Ct. at 2707. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that the infliction by the state of damage to one's reputation without more does not infringe upon a constitutionally-protected liberty interest, but the Court specifically approved the dictum from *Roth*: "Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." 424 U.S. at 710, 96 S.Ct. at 1165. This court analyzed both *Roth* and *Paul v. Davis* in *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977), and concluded:

**6.** In October 1972 Board members Huddleston and Schnaare met with State's Attorney Connell to discuss removal of Endicott from his position as Supervisor. Endicott had been appointed in October 1970, when Huddleston was already a Board member. Schnaare was elected to the Board in December 1970. Thus, Huddleston had observed and worked with the plaintiff for two years, and Schnaare had done the same for nearly two years, before they met

with State's Attorney Connell. Had their motive been simply to rid themselves of a Democratic Supervisor of Assessments, Huddleston and Schnaare more likely would have met with Connell much earlier than October of 1972. The occurrence of the meeting at that time hardly supports plaintiff's conspiracy theory.

**7.** Reasons Nos. 4 and 7 are set out on p. 1212, *supra*.

Since the Court in *Paul v. Davis* specifically approved the *Roth* dictum concerning stigma to reputation, it follows that stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunction* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process.

*Id.* at 973.

 In the present case, we find the conjunction of stigma to reputation and failure to rehire. On the day that Endicott's term as supervisor expired, the County Board publicized reasons Nos. 4 and 7 for not reappointing him, thereby charging him with "dishonesty or immorality." *Board of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. Those two reasons constituted specific, elaborated charges of malfeasance in office sufficient to implicate a due process liberty interest. *See Adams v. Walker*, 492 F.2d 1003, 1008 (7th Cir. 1974). According to *Roth*, the plaintiff then had a constitutional right to notice and a hearing affording an opportunity to clear his name. We conclude that the district court erred in overlooking a violation of plaintiff's liberty interest at the time of the first hearing.

The district court stated in its memorandum opinion that the County Board provided a meaningful public hearing in August 1977. We agree and conclude that the second hearing satisfied procedural due process requirements under the Fourteenth Amendment of the United States Constitution. The purpose of notice and hearing when there is that conjunction of stigma to reputation and failure to rehire "is to provide the person an opportunity to clear his name." *Board of Regents v. Roth*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707. The plaintiff

makes much of the fact that the Board called no witnesses and introduced no evidence at the second hearing, but it is clear that Endicott had a meaningful opportunity to be heard and to present evidence disputing the charges against him. While the Constitution is unbending in its requirement that there be some form of hearing when a due process liberty interest is implicated, the formality and procedural requisites for that hearing may vary. *Id.* at 570–71 n.8, 92 S.Ct. at 2705–06 n.8. In its essence, a hearing demands that the person have the right to support his allegations by argument, however brief, and if necessary, by proof, however informal. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). "The fundamental requirement of due process is the *opportunity* to be *heard* at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (emphasis added). The Board's failure to call witnesses whom plaintiff's counsel could cross-examine did not seriously impede plaintiff's opportunity to argue that the Board's charges were groundless and to support his contentions by calling his own witnesses and presenting his own evidence. Indeed, at his second hearing plaintiff was free to fully address each of the Board's eleven reasons for non-reappointment, as he did later during his district court trial. The fact that plaintiff made little use of his opportunity to be heard does not diminish the sufficiency of that opportunity.[8] We hold that the public hearing held in August 1977 satisfied the procedural requirements of due process of law.

 Although plaintiff received his deserved opportunity to clear his name in 1977, he is entitled to recover damages for any loss he suffered as a result of the first inadequate hearing.[9] Plaintiff alleges that

---

8. In fact, at the second hearing plaintiff's counsel stated that his client would be satisfied with his hearing if he could make several statements. *See* p. 5. Plaintiff's testimony consisted entirely of those statements.

9. Damages are available under § 1983 for actions "found . . . to have been violative of . . . constitutional rights and to have caused compensable injury." *Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 1048, 55 L.Ed.2d 252 (1978), quoting *Wood v. Strick-*

he incurred the expense of attorney's fees in getting the second hearing through the mandamus action in state court. This expense is recoverable as compensatory damages because it was "attributable . . . to deficiencies in procedure." *Carey v. Piphus,* 435 U.S. at 263, 98 S.Ct. at 1052. *See also Kerr v. City of Chicago,* 424 F.2d 1134, 1141 (7th Cir. 1970). Plaintiff would also have been entitled to recover damages for injury to his reputation between the time he was denied due process and the time of the second hearing. At trial in 1979, however, plaintiff admitted there was no proof of any such injury.[10] We conclude, therefore, that plaintiff is entitled to recover compensatory damages in the amount of attorney's fees, expended in obtaining a second hearing.[11]

In the proper case under § 1983, exemplary or punitive damages may be awarded with the specific purpose of deterring or punishing violations of constitutional rights. *Carey v. Piphus,* 435 U.S. at 257 n.11, 98 S.Ct. at 1049 n.11. These damages may be available even in the absence of actual loss to the plaintiff. *Spence v. Staras,* 507 F.2d 554, 558 (7th Cir. 1974). This court has required the showing of aggravating circumstances or malicious intent in order to justify the recovery of punitive damages. *Konczak v. Tyrrell,* 603 F.2d 13 (7th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). Viewing the entire record in the light most favorable to Endicott, we agree with the district court that there was simply no evidence of aggravating circumstances or malicious intent in the initial denial of due process from which a jury could award punitive damages. There is undisputed testimony that the Board members consulted their legal advisor, State's Attorney Connell, to determine the necessary and appropriate procedures for the public hearing which plaintiff re-

quested in 1974. While Connell advised the Board to proceed in a manner later deemed inadequate by the Illinois Appellate Court, there was no evidence of a malicious intent underlying Connell's faulty advice. Had Connell and the Board persisted in their initial posture following receipt of the Illinois Appellate Court's opinion, their action certainly would have constituted "aggravating circumstances." We have already concluded, however, that the County Board adopted appropriate procedures for the plaintiff's second hearing.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for a hearing on the amount of damages.

---

*land,* 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (emphasis deleted).

**10.** *See* note 4, p. 1213.

**11.** At trial, plaintiff offered no evidence that he sustained mental and emotional distress be-

tween 1974 and 1977 caused by the denial of procedural due process, and we do not reach the question of whether such injury would be compensable in a case like this. *See Carey v. Piphus,* 435 U.S. at 262–64, 98 S.Ct. at 1051–52.