John D. KUHLMANN, Plaintiff,

v.

BLOOMFIELD TOWNSHIP, et al., Defendants.

No. 81–C–713.

United States District Court,
E. D. Wisconsin.

Aug. 26, 1981.

Henry A. Sibbing, Lake Geneva, Wis., for plaintiff.

Kirt J. E. Ludwig, Burlington, Wis., and Kasdorf, Dall, Lewis & Swietlik by James P. Reardon, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

The plaintiff moves for a preliminary injunction. As a threshold matter, the defendants question whether this court has personal jurisdiction over them. The defendants were originally served by certified mail, pursuant to local rule 19.01, but subsequently the defendants were personally served. Since personal service of the defendants has now been accomplished, the court has jurisdiction over the defendants.

The plaintiff contends that his dismissal as chief of police for Bloomfield Township violated his first amendment rights to engage in political activity and his due process rights under the fourteenth amendment. He seeks to be reinstated in his job and to have the defendants enjoined from taking any further action to discharge him.

In 1976, Mr. Kuhlmann was hired as the chief of police for Bloomfield Township, Walworth County, Wisconsin. During late 1980 and the first part of 1981, Mr. Kuhlmann supported the candidacy of Don Aronson for election to the Bloomfield Township board. Mr. Aronson's opponent was an incumbent, the defendant Mike Petruniak. On April 7, 1981, Mr. Aronson defeated Mr. Petruniak in the election for second supervisor of Bloomfield Township. On April 10, 1981, a special meeting of the town board was held. Mr. Petruniak was still acting as a supervisor because Mr. Aronson had not yet assumed office. The following resolution was proposed and adopted:

"BE IT RESOLVED by the Town Board of the Town of Bloomfield, Walworth County, Wisconsin that, pursuant to Section 17.13(1), Wisconsin Statutes, John H. [sic] Kuhlmann is hereby re-

moved as Chief of Police of the Town of Bloomfield, effective immediately.

"Introduced and adopted April 10, 1981.

"/s/ Willard Madaus

"/s/ Thomas M. Sullivan

"/s/ Mychajlo Mike Petruniak"

Complaint, Exh. A.

It is not disputed that no hearing was held either before or after the dismissal, and no specific charges were ever presented. Mr. Kuhlmann alleges that the township board held a secret meeting on April 9, 1981, at which it was agreed to discipline Mr. Kuhlmann for his political support of Mr. Aronson.

A preliminary injunction is an extraordinary remedy that should not be used unless clearly warranted. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). To prevail, Mr. Kuhlmann must meet each of four criteria:

"A preliminary injunction will not issue unless the movant establishes: (1) a reasonable likelihood of success on the merits; (2) irreparable injury and the absence of an adequate remedy at law; (3) that the threatened harm to the plaintiff outweighs the harm the injunction may cause the defendant; and (4) that the granting of the injunction will not disserve the public interest." *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057 (7th Cir. 1980).

In *Nekolny v. Painter*, 653 F.2d 1164 (7th Cir. 1981), the court of appeals for this circuit discussed the question of the burden of proof a plaintiff must meet when he alleges improper discharge because of political activity. The plaintiffs in *Nekolny* were county employees "who were found by a jury to have lost their jobs because they had campaigned for the Township Supervisor's opponent in an election." *Id.*, at 1165. The court considered the application of the Supreme Court's decision in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and concluded that the "plaintiff had the burden of proving that the protected conduct was a 'motivating factor' in the action taken against him before the burden

shifted to the defendant to prove that the termination would have occurred even if that plaintiff had not worked for the election of the defendant's opponent." *Nekolny, supra*, at 1167.

The plaintiff has submitted several affidavits to support his contention that the dismissal was motivated by his political support of Mr. Petruniak's opponent. Certain of these affidavits only express the affiants' belief that the plaintiff's dismissal was politically motivated. Other affiants, including Mychajlo Skirka, Wasyl Dobrowolskyj, and Donald DeVries, refer to statements attributed to Mr. Petruniak that indicate a political motivation for the plaintiff's dismissal. In addition, the acting chief of police, Dennis Wisniewski, avers that Mr. Petruniak told him: "Don't follow John's footsteps, or you would be dismissed." Affidavit of Mr. Wisniewski, filed August 7, 1981. Robert Kennedy, the district attorney for Walworth County, avers that when he asked the defendant Tom Sullivan why Mr. Kuhlmann was dismissed, Mr. Sullivan replied: "John should've stayed out of politics." Affidavit of Mr. Kennedy, filed June 17, 1981.

The defendants have submitted several affidavits that controvert many of the affidavits presented by the plaintiff. It is not my function at this stage to make findings of fact; I need only determine whether the plaintiff has made a showing of a reasonable likelihood of success on the merits. Mindful of the *Nekolny* test, I believe that the plaintiff has a reasonable likelihood of success in showing that his political activities were "a motivating factor" in his dismissal.

The defendants argue that Mr. Kuhlmann is an employee who serves at the "pleasure" of the town board. Wis.Stat. § 17.13(1). The Supreme Court has addressed this argument directly. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Court affirmed the issuance of injunctive relief to prevent the dismissal of sheriff's deputies who did not belong to the same political party as the newly-elected sheriff. The deputies "were

non-civil-service employees, and, therefore, not covered by any statute, ordinance, or regulation protecting them from arbitrary discharge." *Id.,* at 350, 96 S.Ct. at 2678. Nonetheless, the *Elrod* Court concluded that patronage dismissals were unconstitutional. The Court noted that " '[f]or at least a quarter of a century, this Court has made it clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.' " *Id.,* at 360–61, 96 S.Ct. at 2683, quoting *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Thus it is not enough for the defendants to argue that Mr. Kuhlmann serves at the board's pleasure; *Elrod* protects even that type of employee from termination because he exercised his political rights.

The defendants carry this argument one step further, arguing that Mr. Kuhlmann was terminated because he exercised his political beliefs in a manner that was inappropriate for his position. Among other things, they point to certain campaigning while Mr. Kuhlmann was in possession of the township's squad car.

*Nekolny* holds that the defendants have the burden of proof on the issue of whether the termination would have occurred even in the absence of an impermissible motivation. *Nekolny, supra,* at 1167–68. The defendants point to no local ordinance or rules governing the conduct of the chief of police. They do cite a state statute, but even the defendants admit that that statute is not applicable to a *township* policeman. *See* Wis.Stat. §§ 164.015, 164.05.

The plaintiff counters this argument by pointing out the nature of the plaintiff's work, which requires his being on duty almost all day and all night. A total ban on the chief's political activity while in possession of the squad car means that the chief would be virtually unable to exercise his political rights. Upon the present record, the defendants' submissions suggesting that the plaintiff campaigned at improper times and misused his official vehicle fall short of meeting their burden of proof. I find that

the plaintiff has a reasonable likelihood of success on this issue.

The defendants also argue that the chief of police holds a policy-making position, and thus dismissal is permissible under the *Elrod* analysis. *Id.,* 427 U.S. at 376, 96 S.Ct. at 2691. In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court discussed this exception; the Court formulated a principle to guide the factual determination.

"In sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.,* at 518, 100 S.Ct. at 1295.

Thus the Supreme Court has placed the burden of this issue on the defendants. The record before me does not substantiate the defendants' position, nor does the case at bar present the typical situation of the dismissal of a policymaker. The exception contemplates the discharge of key personnel by an incoming administration so that the incoming officials can implement their policies. In the case at bar, the plaintiff was discharged by what can be termed a lame duck board. Thus the applicability of the policy-making exception to this case seems dubious. The plaintiff has a reasonable likelihood of success on the merits of this issue and on the merits of the case as a whole. In *Elrod,* the Court noted:

"It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod, supra,* 427 U.S. at 373, 96 S.Ct. at 2690.

The plaintiffs in *Elrod* were threatened with discharge because of their political beliefs; Mr. Kuhlman alleges that he was actually terminated because of them. It would appear that the plaintiff has lost his livelihood as a result of exercising his first amendment right. Upon that assumption,

the plaintiff has sustained an irreparable injury with an absence of any adequate remedy at law.

The third and fourth criteria are that the threatened harm to the plaintiff outweighs the harm that an injunction would cause to the defendants and that the granting of the injunction would not disserve the public interest. The harm to the plaintiff is apparent; he has been discharged from his job and his constitutional rights infringed. The individual defendants will suffer no comparable harm from the issuance of an injunction. Since the other defendants are governmental bodies, any harm to them arguably injures the public interest. Thus any further discussion of the third criterion can be joined with discussion of the fourth.

The circumstances of this case are such that I believe that it would be a greater disservice to the public interest to deny the preliminary injunction. In *Elrod*, the Court engaged in a lengthy discussion of the harm patronage dismissals can cause. *Elrod, supra*, 427 U.S. at 360–73, 96 S.Ct. at 2683–90. Similarly, the specter of the dismissal of a government employee because he exercised his political rights to support an opponent of an incumbent might chill any participation by other employees.

I have limited the discussion of the issuance of a preliminary injunction to the plaintiff's claim of infringement of his first amendment rights and have not considered the plaintiff's due process claims. I am satisfied that on the former issue the plaintiff is entitled to a preliminary injunction. Thus discussion of the due process ground is not necessary.

The due process claim has relevance to the form of the injunction, however. The plaintiff's request for an injunction against discharge seeks too much, for such an injunction could shield him from even proper discharge. The defendants, on the other hand, have argued that the requirements of due process should not come into play because the reasons for the plaintiff's discharge were not publicly stated. *See Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). I find this contention somewhat suspect, given the publicity that attended the plaintiff's dismissal and the averments in the record regarding the various statements of the individual defendants.

A preliminary injunction is appropriate in this case. The defendants will be directed to reinstate the plaintiff to his former position and not to discharge him based on an impermissible consideration of political activity. Any effort to discharge the plaintiff during the pendency of this preliminary injunction would necessitate a pretermination charge of improper conduct, and once such a charge is made, the plaintiff will be entitled to notice and a meaningful hearing. *Endicott v. Huddleston*, 644 F.2d 1208, 1215–16 (7th Cir. 1980); *Weyenberg v. Menasha*, 401 F.Supp. 801 (E.D.Wis.1975). Such a preliminary injunction will not unduly restrict the defendants' ability to administer the police department and deal with any problems that could result from any possible misconduct by Mr. Kuhlmann while in office, for should the need arise the township board is free to suspend Mr. Kuhlmann with pay pending the due process hearing. *See Dahlinger v. Town Board of the Town of Delavan*, 389 F.Supp. 474 (E.D. Wis.1974).

The defendants raise the issue of a security bond, in part to condition Mr. Kuhlmann's cooperation in any prosecutions requiring his testimony. The posting of security is required for the issuance of a preliminary injunction by Rule 65(c), Federal Rules of Civil Procedure. I consider some small amount of security appropriate, and I will require the plaintiff to post a security bond with the clerk of this court in the amount of $1000 by September 10, 1981.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is granted.

IT IS ALSO ORDERED that the defendants are preliminarily enjoined to restore the plaintiff to the position he held on April 10, 1981, when the defendants acted to terminate him.

IT IS FURTHER ORDERED that the defendants be and hereby are enjoined from terminating the plaintiff during the

pendency of this action as a result of any impermissible consideration of his political activity and, as to any other grounds, without first providing the plaintiff with a hearing that comports with the requirements of due process.

IT IS FURTHER ORDERED that the plaintiff post a security bond with the clerk of court in the amount of $1000 by September 10, 1981. Failure on the part of the plaintiff to comply with this order will result in the dissolution of the preliminary injunction upon the application of the defendants.