16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Stephen GOLDEN, Plaintiff-Appellant,
v.
HENDRICKS COUNTY SHERIFF'S DEPARTMENT and Sheriff Thomas
Underwood, in his official and individual
capacities, Defendants-Appellees.
 No. 93-2124.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1994.
Decided Feb. 14, 1994.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Lieutenant Stephen Golden filed a civil rights action pursuant to 42 U.S.C. Sec. 1983, alleging that his employers, the defendants, violated his First Amendment right of political association when they reassigned him and harassed him following his unsuccessful bid for the office of Sheriff in Hendricks County, Indiana in the 1990 Republican primary election. In addition, Golden alleged that the defendants demoted him without just cause in violation of state law. IND.CODE ANN. Sec. 36-8-3-4 (West 1983 & Supp.1993). Defendants filed a motion to dismiss that was treated as one for summary judgment by the district court. The court granted the motion, and Golden appeals. We review the grant of summary judgment de novo, Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 532 (7th Cir.1993), and now affirm.
 
 
 2
 Among Golden's opponents in the primary was Thomas Underwood, former Chief Deputy of the Sheriff's Department, who had been terminated in May 1989. Underwood won the general election and assumed the office of Sheriff in January 1991. Thereafter, Golden's responsibilities were severely curtailed. Golden claims that this action was the beginning of a harassment campaign. Although he retained his rank and salary, he was transferred from Commander of the Support Services Division to the Uniform Enforcement Division, and no longer handled media and community relations, applications for and compliance with federal and state grants, inventory and quartermaster control, white collar crime investigations and the indirect supervision of office personnel. Moreover, Sheriff Underwood issued an order that Golden would no longer function in a supervisory capacity, and that he would report to a lower-ranking Sergeant. In addition, Golden was denied permission to attend two supervisory training programs and was the target of several internal investigations and two verbal reprimands.[1] He contended that these investigations were completely baseless. Furthermore, Golden averred that he was the only member of the Sheriff's Department to be assigned outdated equipment and vehicles, and that contrary to the department's policies, he was often treated as a deputy rather than as a higher-ranking Lieutenant.
 
 
 3
 On appeal, Golden claims that the district court erred in failing to analyze the campaign of harassment in its entirety when it divided his allegations into four separate categories and dismissed each set of complaints individually. Although it is correct that a campaign of harassment must be viewed in its entirety, Pieczynski v. Duffy, 875 F.2d 1331, 1336 (7th Cir.1989) (numerous trivial allegations taken together may constitute a First Amendment violation), this court has also resorted to the methodology used by the district court for functional ease. Rakovich v. Wade, 850 F.2d 1180, 1197 (7th Cir.), cert. denied, 488 U.S. 968 (1988). This technique is proper as long as the district court in its conclusion considered all the evidence as a whole "to determine its true significance." Id. Although we find no error in the court's analysis, we affirm its decision because Golden failed to establish that the alleged campaign of harassment was politically motivated.
 
 
 4
 Dismissal of a public employee on the basis of political party affiliation or loyalty violates the First Amendment unless the employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518 (1980); Elrod v. Burns, 427 U.S. 347, 372 (1976). In Rutan v. Republican Party of Illinois, 497 U.S. 62, 79 (1990), the Supreme Court expanded the Elrod and Branti rule to promotion, transfer, recall, and hiring decisions based on party affiliation, thus making it applicable to the instant case. To succeed on a First Amendment political harassment claim, the plaintiff must first prove by a preponderance of the evidence that his political views and behavior were a motivating factor in the decision to transfer him and to initiate a campaign of harassment. Selch v. Letts, 5 F.3d 1040, 1042 (7th Cir.1993); Nekolny v. Painter, 653 F.2d 1164, 1167 (7th Cir.1981), cert. denied, 455 U.S. 1021 (1982). See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Once established, the burden shifts to the defendants to show that party affiliation is critical to job performance. Selch, 5 F.3d at 1042.
 
 
 5
 In this case, the evidence of political motivation consisted of Underwood's acknowledgement in the local newspaper that he was terminated as Chief Deputy in 1989 because he planned to run against Golden in the primary election; that Golden and Underwood's political opposition was causing dissension within the Sheriff's Department; that they opposed each other in the primary election; and that Golden's reassignment, the receipt of inferior equipment, and the internal investigations, all occurred shortly after Underwood's election.
 
 
 6
 In Newcomb v. Brennan, 558 F.2d 825, 828 (7th Cir.), cert. denied, 434 U.S. 968 (1977), cited in Golden's brief, the court held that an individual does not have a constitutional right to seek political office. Yet, because the defendant specifically stated that he disapproved of plaintiff's candidacy and that he would fire him if he persisted, the court concluded that the discouragement of a particular candidacy represented punishment based on the content of a communicative act. Id. Similarly, the court in Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982), found that a neutral rule compelling every public employee to take a leave of absence to run for public office did not violate the First Amendment; however, because the plaintiff showed that she was reprimanded for publicly endorsing a particular candidate, and thus was punished for espousing her views, political motivation for a harassment campaign was established.
 
 
 7
 Here, unlike in Newcomb and Bart, there is no direct evidence linking Golden's reassignment with his political campaign against Underwood. Moreover, the circumstantial evidence suggests nothing more than speculation that the harassment was politically motivated. The allegations of personal animosity which existed between both candidates years prior to the election do not establish political retaliation. Rakovich, 850 F.2d at 1193; Endicott v. Huddleston, 644 F.2d 1208, 1215 (7th Cir.1980). Nor may Golden base his claim solely on the fact that the alleged acts of harassment followed shortly after Underwood took office. Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1259 (7th Cir.1985); see also Garrett v. Barnes, 961 F.2d 629, 633 (7th Cir.1992) (plaintiff's replacement by defendant's political supporter was constitutional even though plaintiff performed job well). It is true that Golden was not merely a member of the challenging Republican faction, but was also Underwood's opponent in the primary, and that Underwood publicly acknowledged that his threat to Golden's candidacy resulted in his termination as Chief Deputy. Nonetheless, we conclude that, as a matter of law, Golden has not submitted enough evidence to support a finding of political revenge or motivation. Consequently, we AFFIRM the district court's grant of summary judgment to the defendants. Furthermore, we AFFIRM the district court's dismissal of Golden's pendent state claim alleging that he was demoted without just cause, see IND.CODE ANN. Sec. 36-8-3-4, pursuant to 28 U.S.C. Sec. 1367(c)(3). See Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993).
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 Golden was investigated for disobeying a stop sign reported by an anonymous caller; stealing civil process papers; authoring and distributing a newsletter highly critical of Sheriff Underwood; and stealing the personal possessions of a convicted felon. None of the incidents resulted in a conviction or reprimand. In addition, he was reprimanded for stating over the radio to a fellow officer to be careful and disclosing the limitations of the Department's investigatory resources, and also for failing to notify the commanding officer of a particular crime that had occurred