**L.E. EGUIA, Plaintiff-Appellant,**

v.

**Joyce TOMPKINS, et al., Defendants-Appellees.**

No. 84-2451
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 8, 1985.

David T. Lopez, Houston, Tex., for plaintiff-appellant.

Doherty & Williamson, Larry J. Doherty, Houston, Tex., for defendants-appellees.

Before GEE, JOHNSON, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

In this case we are called upon to determine what process is due a county official whose salary is withheld to offset alleged insufficiencies in the fees of office he deposited with the county. The plaintiff, L.E. Eguia, a former Justice of the Peace in Fort Bend County, Texas, sued the county and various county officials, alleging that they acted unconstitutionally[1] and in violation of federal civil rights statutes[2] when they withheld his final paycheck. The defendants moved for summary judgment and for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The district court granted summary judgment for the defendants. The plaintiff appealed the entry of summary judgment and the denial of his cross motion for partial summary judgment. Because the plaintiff's complaint states a claim upon which relief can be granted and genuine

1. Mr. Eguia alleged violations of the First, Fifth, and Fourteenth Amendments. He also alleged violations of parallel provisions in the Texas Constitution.

2. Mr. Eguia brought suit under 42 U.S.C. §§ 1983, 1985, and 1988. He also brought a state-law defamation claim.

issues of material fact remain to be resolved, we vacate the judgment and remand the action to the district court for entry of a partial summary judgment and for further proceedings consistent with this opinion.

### Facts

Because on review of the entry of summary judgment we consider the record in the light most favorable to the party opposing the motion, *National Hygienics, Inc. v. Southern Farm Bureau Life Ins. Co.*, 707 F.2d 183, 185–86 (5th Cir.1983), we state the facts in the version most favorable to the plaintiff. Mr. Eguia was elected Justice of the Peace in Fort Bend County, Texas and served in that position from 1979 to 1982. At the time of his election, he was the first and only Republican to hold elective office in the county. One of Mr. Eguia's duties as Justice of the Peace was to collect and record fees due for his services and to deposit them in the county Officers' Salary Fund from which his salary was paid. Tex.Rev.Civ.Stat.Ann. arts. 3896, 3912e § 3, § 5 (Vernon 1966). Mr. Eguia made monthly reports to the County Auditor, Joyce Tompkins, one of the defendants in this case. Ms. Tompkins approved those reports. Within a few months of Mr. Eguia's taking office, Ms. Tompkins accused Mr. Eguia of malfeasance or misfeasance in office. The plaintiff alleges that this action and the subsequent actions of Ms. Tompkins and the other defendants[3] complained of were motivated by the defendants' animosity toward Mr. Eguia's political beliefs and associations. When his term of office expired on December 29, 1982, Mr. Eguia delivered his records of office and account books to the County Auditor's office. At that time, county personnel delivered to him a letter from Ms. Tompkins that alleged discrepancies in his reports, bank statements, or books of account for the period January 1979 through May 1981. Ms. Tompkins withheld Mr. Eguia's last paycheck and reimbursement of expenses for the month of December. Mr. Eguia wrote to county officials shortly thereafter, explaining his position that his records were in order.

In March 1983 Mr. Eguia filed this lawsuit. In February 1984 the county furnished Mr. Eguia with an eight-page document prepared by an assistant to the County Auditor summarizing the alleged deficiencies in his accounts. In late February 1984, the court set the case for trial in early April. On March 12, 1984, more than fourteen months after the County Auditor withheld Mr. Eguia's paycheck, the Commissioners' Court of Fort Bend County held a hearing at which the plaintiff was given an opportunity to explain the alleged discrepancies in his accounts. The county did not present evidence at this hearing, other than to draw the plaintiff's attention to the County Auditor's summary. The plaintiff's attorney presented a statement at the hearing protesting the county's failure to comply with Tex.Rev.Civ.Stat.Ann. art. 3912e, § 5 (Vernon 1966), which requires that the Commissioners' Court furnish an officer with an itemized statement of uncollected fees and provide a hearing on ten days' notice before it deducts from his salary the amount of fees that the officer has negligently failed to collect.[4]

---

**3.** Named defendants were Ms. Tompkins; Jodie Stavinoha, the County Judge; William A. Meitzen, the Criminal District Attorney for the county; and the county itself.

**4.** Article 3912e, § 5 provides:

It shall be the duty of all officers to charge and collect in the manner authorized by law all fees and commissions which are permitted by law to be assessed and collected for all official service performed by them. As and when such fees are collected they shall be deposited in the Officers' Salary Fund, or funds provided in this Act. In event the Commissioners' Court finds that the failure to collect any fee or commission was due to neglect on the part of the officer charged with the responsibility of collecting same, the amount of such fee or commission shall be deducted from the salary of such officer. *Before any such deduction is made, the Commissioners' Court shall furnish such officer with an itemized statement of the uncollected fees with which his account is to be charged, and shall notify such officer of the time and place for a hearing on same, to determine whether such officer was guilty of negligence, which time for hearing shall be at least ten days subsequent to*

Mr. Eguia's attorney declined to rebut the discrepancies documented in the County Auditor's summary. Instead, he contended that the summary did not serve as the itemized notice required by article 3912e and observed that Ms. Tompkins, at her deposition, had been unable to explain the document, which she said had been prepared by an assistant. Although Mr. Eguia's attorney offered to respond to a "properly" itemized statement, Mr. Eguia did not try to call the assistant to explain the summary.

Mr. Eguia's response evidently did not satisfy the Commissioners' Court, which found that Mr. Eguia negligently failed to collect fees that he should have collected; that the County Auditor should deduct those fees from his salary; that the County Auditor was right to withhold Mr. Eguia's paycheck; and that Mr. Eguia had failed to cooperate with the county in rectifying the discrepancies in his accounts. About a month later, the county moved to dismiss this suit or for summary judgment, and Mr. Eguia filed a cross motion for partial summary judgment in his favor on the denial of procedural due process claims.

### District Court's Opinion

The district court entered judgment for the defendants. After stating the requirements of due process to be that Mr. Eguia be given 1) written notice of the reasons for a deprivation and 2) an effective opportunity to rebut those reasons, the court held that Ms. Tompkins' letter of December 29, 1982, and the summary document furnished in February of 1984 provided the

the date of notice. Unless an officer is charged by law with the responsibility of collecting fees, the Commissioners' Court shall not in any event make any deductions from the authorized salary of such officer.
(emphasis added). We need not consider whether this statute violates Tex.Const. art. 16, § 28, which prohibits the garnishment of current wages for personal service except for the enforcement of court-ordered child support payments. Mr. Eguia does not raise the contention on appeal, and we doubt whether his complaint can be read to incorporate it. He alleges that the withholding of payment is "without any sanction or authority in the laws of the state of

required notice and that the March 12, 1984, hearing provided Mr. Eguia with an effective opportunity to rebut the allegations against him. The court found that the delay in affording the hearing was as much the fault of the plaintiff as the county. In addition, it held that under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the post-deprivation hearing sufficiently met the requirements of due process.

### Summary Judgment Motion

Before we reach the plaintiff's contentions that the district court erred in its application of the law when it entered summary judgment, we must turn our attention to a procedural matter. Rule 56(c) of the Federal Rules of Civil Procedure provides that the court may enter summary judgment if it concludes, after consideration of the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file,[5] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. When the defendants filed their motion for summary judgment on April 17, 1984, they attached in support of the motion unauthenticated excerpts from the commissioners' proceedings and an affidavit signed by their attorney, to the effect that the facts and allegations contained in the defendants' motion for summary judgment were true and correct. It was not until August 8, 1984, six days after the court entered summary judgment, that the defendants filed supplemental affidavits authenticating the excerpts from the March 12, 1984, proceedings. At the same time,

Texas" but also complains that the defendants acted "in derogation of provisions of the Constitution of the State of Texas which *parallel* those of the United States Constitution" (emphasis added).

5. Mr. Eguia is mistaken in his apprehension that the parties' depositions are filed on record in this case. Similarly, there are neither answers to interrogatories nor formal admissions of record. Thus the court entered summary judgment only on the basis of the pleadings and affidavits.

the defendants added a supplemental affidavit signed by Jodie Stavinoha, a defendant and the County Judge of Fort Bend County. The affidavit is substantially the same as that signed by the defendants' attorney and filed April 17.

■ It could not escape our notice that the district court granted summary judgment on the basis of a motion supported by unauthenticated documents and an improper affidavit. Although we do not subscribe to the proposition that a litigant may routinely shore up such fundamental infirmities in a motion for summary judgment with subsequently-filed affidavits,[6] *see Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators,* 563 F.2d 205, 207 (5th Cir.1977); *Ramsey v. United States,* 463 F.2d 815, 817 (D.C.Cir.1972); *Garcia v. American Marine Corp.,* 432 F.2d 6, 8 (5th Cir.1970) (per curiam), we have concluded that in this case any error was harmless. The text of the motion for summary judgment offered to supply the original transcript of the proceedings in Commissioner's Court if the authenticity of the attached documents were questioned. It was not. Documents presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use. *McCloud River Railroad Co. v. Sabine River Forest Products, Inc.,* 735 F.2d 879, 882 (5th Cir.1984); *Hicks v. Harris,* 606 F.2d 65, 67 n. 3 (5th Cir.1979); *Munoz,* 563 F.2d at 214; *Townsend v. Columbia Operations,* 667 F.2d 844 (9th Cir.1982). Thus the court acted within its discretion when it relied upon the documents, rather than, sua sponte, requesting that the defendants properly authenticate them.

■ The attorney's affidavit filed by the defendants in support of their motion is another matter. The plaintiff properly objected to its use in the district court. It attests to the truth of the facts and allegations contained in the defendants' motion. As to at least one of these facts, it appears that the attorney lacked personal knowledge.[7] We cannot condone the use of such an improper affidavit. *See Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980) (per curiam); *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir.1976); *Maddox v. Aetna Casualty and Surety Co.,* 259 F.2d 51, 53 (5th Cir.1958); *Inglett & Co. v. Everglades Fertilizer Co.,* 255 F.2d 342, 349–50 (5th Cir.1958); *Wright v. Federal Machine Co., Inc.,* 535 F.Supp. 645, 648 (E.D.Pa.1982); *but cf. Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir. 1980) (approving reliance on affidavit of attorney who had negotiated settlement and thus had personal knowledge of matters involved in settlement). We have read the district court's opinion closely, however, and we conclude that the court need not have relied upon any fact affirmed by that affidavit in reaching its conclusions. We therefore do not reverse the rendering of summary judgment because of the failure to comply with Rule 56.

### Political Association Claims

■ Nonetheless, the summary judgment cannot stand. Neither party presented affidavits to show whether Mr. Eguia's paycheck was withheld for a reason infringing on his constitutional right to freedom of association. In this procedural posture, we must thus take the allegations of

---

6. Under Rule 6(d), affidavits in support of a summary judgment should be served at the time the motion is served; rule 6(b) gives the court discretion to permit later service when the failure to act in a timely fashion was due to excusable neglect. *See McCloud River Railroad Co. v. Sabine River Forest Products, Inc.,* 735 F.2d 879, 882 (5th Cir.1984); *Woods v. Allied Concord Finance Corp.,* 373 F.2d 733 (5th Cir.1967). We cannot locate any finding of excusable neglect in the record, and we have difficulty imagining any excuse for failure to file an affidavit until *after* the entry of judgment.

7. Among other things, the defendants' motion for summary judgment stated that the plaintiff appeared before the Commissioners' Court on March 12, 1984, but refused to present evidence. The attached transcript of the hearing records Commissioner Pustka's remark that counsel for the county was not present at the hearing.

Mr. Eguia's complaint as true. Those allegations state a claim upon which relief can be granted, *see generally Bueno v. City of Donna,* 714 F.2d 484 (5th Cir.1983); *Wilson v. Taylor,* 658 F.2d 1021, 1027 (5th Cir.1981); *Endicott v. Huddleston,* 644 F.2d 1208, 1214–15 (7th Cir.1980), and it was error to dismiss them.

Similarly, Mr. Eguia's complaint stated a cause of action for defamation grounded in state law. The parties did not address this claim in their summary judgment motions, Mr. Eguia did not abandon it, and it must stand.[8]

■ The district court may have accepted, *sub silentio,* the defendants' contention that Mr. Eguia, in an earlier motion for a protective order, waived all claims in his pleadings except the claim for denial of procedural due process. If the court accepted this contention, it erred. Nothing in the record suggests to us that Mr. Eguia abandoned the contentions in his pleadings.[9]

### The Procedural Due Process Claim

The district court correctly stated the requirements for due process of law. It erred, however, when it characterized the process afforded Mr. Eguia as meeting those requirements, at least on the basis of such facts as have been established on this record. Because we conclude that genuine issues of material fact remain to be determined before the court can conclude as a matter of law that the county afforded Mr. Eguia procedural due process, we must vacate the judgment and remand the case for modification of the entry of summary judgment as to that claim.

■ The parties have expended a great deal of energy on the question whether the county's actions conformed to the standards set forth in section 5 of article 3912e.[10] That statute sets forth the notice and hearing requirements of the State of Texas. We are not bound by it in assessing whether the county afforded minimum due process as a constitutional matter. If the State of Texas demands that its officials afford a more elaborate process than the Constitution requires, its demand cannot alone expand the boundaries of federal, constitutional due process.[11] *See Board of Curators v. Horo-*

---

8. The district court has not yet ruled upon the defendants' assertion that Eleventh Amendment immunity bars this suit. We think it would be premature to take it upon ourselves to consider what effect, if any, the Supreme Court's decision in *Pennhurst State School & Hospital v. Haldeman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), has upon the assertion of the pendent state claims here.

9. In their motion for summary judgment, the defendants contended that, by stating in an earlier motion for protective order "this action concerns ... the plaintiff's rights to due process of law," Mr. Eguia had abandoned all claims other than his procedural due process claim. We disagree. The due process clause of the Fourteenth Amendment makes applicable to the states the First Amendment guarantee of freedom of association under which Mr. Eguia sues. Moreover, we think we do Mr. Eguia no injustice in regarding the motion as a strategic attempt to prevent the county from mooting his procedural due process claims. Thus we are not surprised that the motion refers only to infringement of "due process" rights and not to other claims.

10. Indeed, the county has gone so far as to make the argument that because it withheld Mr.

Eguia's entire paycheck, rather than merely deducting an amount from it, it was not subject to the statute.

11. We recognize the appeal of the proposition that a state cannot promise one thing procedurally and do another without violating the constitutional guarantee of due process. Indeed, we find that proposition suggested in dictum in this court's opinion in *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970), and followed in *Warren v. National Association of Secondary School Principals,* 375 F.Supp. 1043, 1048 (N.D.Tex. 1974). *See also Wheeler v. Mental Health & Mental Retardation Auth.,* 752 F.2d 1063, 1068 n. 2 (5th Cir.1985) (holding premised upon stipulation by the parties that the plaintiff had a protected property interest in the procedures in the defendant's handbook, which procedures defendant was required to follow). We are convinced, however, that in a properly focussed due process analysis the state's promises play a role only in the determination of whether a property interest subject to the protection of due process of law exists. *See Bishop v. Wood,* 426 U.S. 341, 344–46, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972).

**1138**

witz, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978); *Wells v. Hico Indep. School Dist.*, 736 F.2d 243, 253 n. 13 (5th Cir.1984), *U.S. appeal pending; Atencio v. Bd. of Ed.*, 658 F.2d 774, 779 (10th Cir.1981); *Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir.1976).

■ We begin, then, with the constitutional due process analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The first step in that analysis need not detain us long here. There can be no doubt that the plaintiff's interest in his salary and expense reimbursement is a property interest protected by the Constitution. *See, e.g., Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Orloff v. Cleland*, 708 F.2d 372, 378 (9th Cir.1983). We then proceed to consider what procedures were required before the county could deprive Mr. Eguia of his salary and expenses. In *Mathews* the Supreme Court outlined a three-factor analysis for determining what process is due:

> [I]dentification of the specific dictates of due process generally requires consideration of ...: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

■ After consideration of these factors, we hold that the constitutional guarantee of due process of law did not require the formal predeprivation hearing before the County Commissioners' Court that the Texas statute mandates and the plaintiff de-

mands. The plaintiff's interest in the receipt of a single paycheck for his last pay period and expense reimbursement for the month of December is substantial, but we cannot adjudge it to be of the same magnitude as the interest of a person "on the very margin of subsistence" in the receipt of governmental benefits. The Supreme Court's concern for the privation such persons might suffer from a loss of benefits weighed heavily in the Court's decision in *Goldberg v. Kelly*, which established a right to an evidentiary hearing before welfare benefits could be terminated. 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). When the potential deprivation is less severe, less formal predeprivation procedures suffice. *Mathews v. Eldridge*, 424 U.S. 319, 340–41, 96 S.Ct. 893, 905–06, 47 L.Ed.2d 18 (1976). We observe, too, that withholding a single, last paycheck does not present the same potential for the perpetuation of an erroneous deprivation as does the denial of salary or benefits to one whose employment or entitlement otherwise would have continued indefinitely.

Similarly, we do not think that the risk of erroneous deprivation through the procedures used is sufficiently great to warrant a full, formal hearing before the deprivation, or an opportunity to respond orally rather than in writing. Calculating whether accounts balance is largely a mathematical determination. When a determination is for the most part based upon objective, documentary evidence, there is less reason to fear that lack of a formal hearing will result in an erroneous decision. *See Mathews*, 424 U.S. at 343–44, 96 S.Ct. at 906–07; *Ciechon v. City of Chicago*, 634 F.2d 1055, 1059 (7th Cir.1980). When an official is in a position to collect most fees before he performs services, it seems entirely reasonable to infer neglect on his part when his books do not balance, unless he can explain

The state's breach of its own procedures in the deprivation of a property interest rises to the level of a constitutional violation only when the state's actions do not comport with the process that would be required in the absence of the state statute. To hold otherwise would be to acknowledge a constitutional requirement of one due process for the citizens of Texas, another for the citizens of Louisiana, and yet another for the citizens of each state. We decline to make such a shambles of the Constitution's uniform grant of rights to all United States citizens.

the discrepancies. Resolution of the dispute here does not depend upon assessment of the credibility of witnesses, *see Mathews*, 424 U.S. at 343–44, 96 S.Ct. at 906–07; *Califano v. Yamasaki*, 442 U.S. 682, 696–7, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979), nor is a Justice of the Peace likely to have trouble expressing himself in writing. Thus making the decision without benefit of oral testimony will not greatly increase the risk of error.

 It is firmly established, however, that due process requires notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs.[12] *See Mathews*, 424 U.S. 319, 96 S.Ct. 893; *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Russell v. Harrison*, 736 F.2d 283, 289 (5th Cir.1984); *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir.1980); *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated and remanded. on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). If, as the plaintiff alleges, the defendants did not give him an informal opportunity to tell his side of the story before they withheld his check, the defendants cannot demonstrate that even a prompt postdeprivation hearing would have satisfied the requirements of due process, although it would necessarily lessen any damages Mr. Eguia might be able to show. We have held that the opportunity to respond may be deferred until after the deprivation has occurred only in "extraordinary situations" in which:

(1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for very prompt action, and (3)

the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Breath v. Cronvich*, 729 F.2d 1006, 1010 (5th Cir.1984), *modified on other grounds*, 734 F.2d 225. We recognize an important government interest in the collection of revenue, but we see no special need for very prompt action when the alleged discrepancies in record-keeping date back more than a year before the date on which the paycheck is withheld and when, according to the facts as we must view them in the procedural posture of this case, the County Auditor has received periodic reports throughout the official's term of office. The county does not suggest that Mr. Eguia was insolvent and that attempts to recover uncollected fees through the judicial process after he received his paycheck would have been unsuccessful.

Mr. Eguia's interest in the receipt of his salary is no less substantial than the property interests protected in *Sniadach* and *Fuentes*. While we are reassured that the objective nature of the decision to be made minimized the risk of error here, we are unwilling to depart from precedents requiring an opportunity to be heard prior to a deprivation when we can see no countervailing governmental interest in delaying the plaintiff's opportunity to respond to the allegations against him. Once an auditor has determined that an official's books do not balance, there is no further government interest in delaying the opportunity to be heard.[13] We would be surprised to learn that a backlog of similar cases awaiting decision interfered with a timely hearing of the official's response in this case. Moreover, we cannot give much weight to the additional fiscal and administrative bur-

---

12. We reject the defendants' argument that no final deprivation, but merely a temporary withholding of pay, took place before the March 12, 1984, hearing. The County Auditor's decision to withhold Mr. Eguia's paycheck remained in force indefinitely unless the Commissioners' Court overturned it. *See Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir.1976), *vacated and re-*

*manded on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978).

13. *See Barry v. Barchi*, 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979); *Ciechon v. City of Chicago*, 634 F.2d 1055, 1060 (7th Cir. 1980).

dens involved in affording a predeprivation opportunity to respond when the state legislature has itself weighed those factors and struck the balance in favor of affording an even more elaborate predeprivation hearing.

That the county convened a postdeprivation hearing for Mr. Eguia on March 12, 1984, remains relevant, however. That hearing remedied whatever infirmities may have been present in the process previously afforded Mr. Eguia, for the procedures under which it was conducted undoubtedly met due process standards. The auditor's summary gave Mr. Eguia fair notice of the allegations against him. *See Truly v. Madison General Hospital*, 673 F.2d 763, 766 (5th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 214, 74 L.Ed.2d 170 (1982); *Glenn v. Newman*, 614 F.2d 467, 473 (5th Cir.1980). The fact that the Commissioners' Court did not present its own witnesses did not render the hearing inadequate. *See Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir.1980). Although the auditor's summary, which the Commissioners' Court accepted as evidence of neglect, was not a model of clarity, nothing in the record indicates that Mr. Eguia was denied the opportunity to identify and cross-examine the preparer of the document, whoever he or she may have been. In addition, the County Judge's letter of February 27, 1984, notifying Mr. Eguia that a hearing had been set, expressly made available to Mr. Eguia all records of his in the county's possession so that he might prepare a response.[14] At the hearing, instead of responding to the substance of the allegations in the auditor's summary, Mr. Eguia aired his grievance with the county for its failure to follow the state procedural statute.[15] He cannot now complain of the adequacy of the hearing when he himself chose to forego the opportunity to clear his name and protect his property interest from erroneous deprivation.

The plaintiff also attacks the adequacy of the commissioners' hearing on the theory that the county, involved as it was in this lawsuit, could not serve as an impartial fact finder. We do not agree. *See Price v. City of Junction*, 711 F.2d 582, 590 (5th Cir.1983); *Blair v. Robstown Indep. School Dist.*, 556 F.2d 1331, 1335 (5th Cir.1977) (quoting *Robison v. Wichita Falls & North Texas Com. Act. Corp.*, 507 F.2d 245, 253 (5th Cir.1975)).[16] Because we find no merit in Mr. Eguia's attacks on the form of the March 12, 1984, hearing, the accrual of any damages Mr. Eguia may have suffered from the alleged earlier denial of procedural due process ceased on that day.[17] *Wilson v. Taylor*, 658 F.2d 1021, 1031 (5th Cir.1981); *Endicott v. Huddleston*, 644 F.2d 1208, 1216–17 (7th Cir.1980); *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir.1980).

We do not agree with the district court, however, that the commissioners' hearing was timely as a matter of law. We have held that due process requires meaningful opportunity to be heard *before* a final deprivation. Unless the county can

---

**14.** That letter appears in the record as an attachment to the plaintiff's motion for protective order, the plaintiff thus implicitly admitted its authenticity, and we believe that Rule 56 permits us to consider it in assessing whether summary judgment was properly granted. *See Auto Drive-Away Co. v. Interstate Commerce Commission*, 360 F.2d 446, 449 (5th Cir.1966).

**15.** We need not consider whether the notice the county provided was itemized as required by article 3912e. Mr. Eguia should have put forward his complaint concerning the failure to itemize in a state-law mandamus action. It is not relevant to the due process inquiry here.

**16.** If the plaintiff contends that the hearing was marred because some of those present took part in the alleged conspiracy to deprive him of property because of his political views, he may raise that contention in conjunction with his First Amendment claims.

**17.** We refer the parties to *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Wheeler v. Mental Health & Mental Retardation Auth.*, 752 F.2d 1063, 1070–72 (5th Cir.1985); *Russell v. Harrison*, 736 F.2d 283, 291–92 (5th Cir.1984); *Wilson v. Taylor*, 658 F.2d 1021, 1031–35 (5th Cir.1981); and *Endicott v. Huddleston*, 644 F.2d 1208, 1216–17 (7th Cir.1980), which elucidate the damages recoverable for a denial of procedural due process.

demonstrate a legitimate reason for the delay, we cannot countenance a fourteen-month lapse of time between the deprivation of the property interest and the granting of a meaningful opportunity to be heard to contest that deprivation. We do not know whether the plaintiff in some way caused this delay: we know only that the record does not support the district court's finding that he did. The parties have thus presented a genuine issue of material fact that bears upon whether the commissioners' hearing was timely. This issue remains to be resolved, and the court erred in granting the defendants' motion for summary judgment.

 We also conclude that the district court properly denied the plaintiff's cross motion for partial summary judgment on the procedural due process issue. Because the record does not disclose when the withheld paycheck was scheduled to be delivered to Mr. Eguia, we cannot say that Ms. Tompkins' December 29 letter did not provide notice before the deprivation took place. We cannot determine whether the county considered the six-page letter that the plaintiff maintains he sent in response to Ms. Tompkins' letter in such a way as to have afforded Mr. Eguia a meaningful opportunity for written response before the deprivation. It is also disputed whether the letter was received, and it appears that Mr. Eguia may have formulated his response in that letter without having had access to his records of office. Moreover, just as we cannot say as a matter of law that the March 12 hearing was timely because we do not know whether the delay was the fault of Mr. Eguia, we cannot say as a matter of law that it was untimely, either.

Accordingly, we hold that the district court's entry of summary judgment for the defendants must be modified to decide in their favor only the issue whether the form of the hearing conducted on March 12, 1984, comported with procedural due process. The grant of summary judgment for the defendants on all claims and issues was error. We therefore VACATE the judg-

ment and REMAND the case to the district court for entry of partial summary judgment in accordance with this opinion and for further proceedings.

VACATED and REMANDED.