# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2010

No. 10-60096

Lyle W. Cayce
Clerk

PAMELA HERVEY,

Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF EDUCATION,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CV-180-DPJ-JCS

Before BARKSDALE, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this action against the Mississippi Department of Education (MDE), based, *inter alia*, on claimed racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Pamela Hervey challenges an adverse summary judgment. For this appeal, however, she pursues only the Title VII claim. At issue are: the district court's relying on MDE's position statement to the EEOC, concerning, for summary-judgment purposes, whether MDE produced a legitimate non-discriminatory reason for Hervey's discharge;

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60096

and whether Hervey established a genuine issue of material fact for intentional discrimination. AFFIRMED.

I.

Hervey, who is black, began her employment as a teacher at the Mississippi School for the Deaf (MSD) in 1988. In 2005, she applied for, and was promoted to, the position of Secondary Principal of MSD's high school. That school has a student-body population of 100 students that is ninety-percent black, with approximately 10 to 15 teachers.

Within her first year as Secondary Principal, the State Superintendent of Education, Dr. Bounds, and the Assistant State Superintendent of Education, Dr. Buckley, initiated a performance review of Hervey. As reflected in the summary-judgment record, teachers were complaining about Hervey's performance as Secondary Principal and the resulting deteriorating educational environment at MSD; and, the performance review revealed, *inter alia*, concerns about Hervey's: literacy; not reporting inappropriate student/teacher relationships; absenteeism; failure to maintain a presence on campus, supervise employees, or maintain a proper educational environment; and lack of leadership skills.

In late November 2006, during Hervey's tenure as Secondary Principal, approximately 20, predominantly black, students organized a protest at school, objecting to the hiring of four black teachers, two of whom were *not* proficient in sign language. Hervey initially heard about the students planning a protest in early November and met with the students to discuss it. According to Hervey, students were dissatisfied with her hiring teachers who could not sign because it demonstrated her insensitivity to students' deafness. She stated in her deposition that teachers and staff harboring racial animus manipulated students into protesting.

No. 10-60096

On 1 December 2006, shortly after the protest, and upon recommendation by Dr. Buckley, Dr. Bounds terminated Hervey's employment as Secondary Principal.  In response, Hervey filed a charge of discrimination with the EEOC, claiming unlawful race discrimination.  The EEOC subsequently issued Hervey a right-to-sue letter.

On 29 November 2007, Hervey filed this action against MDE in state court, claiming violations under Title VII and 42 U.S.C. §§ 1981 and 1983, as well as presenting state-law tort claims.  MDE removed this action to district court and moved for summary judgment.

On 6 January 2010, following discovery, the district court granted summary judgment for MDE, holding:  it satisfied its burden of producing a legitimate, non-discriminatory reason for its employment decision, and there was no genuine issue of material fact (on either pretext or a "cat's-paw" theory, as discussed *infra*) on intentional discrimination.

## II.

A summary judgment is reviewed *de novo*.  *E.g.*, *Blow v. City of San Antonio,* 236 F.3d 293, 296 (5th Cir. 2001).  It is appropriate when the movant shows there is no genuine issue as to any material fact and is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)(2); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 650-51 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In the Title VII context, a genuine issue of material fact exists if the summary-judgment record would permit a reasonable jury to return a verdict for the nonmovant on the central issue of intentional discrimination.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Roberson*, 373 F.3d at 651-52.   For our *de novo* review, we examine the record as a whole, viewing the evidence in the light most favorable to the nonmovant.  *E.g.*, *Blow*, 236 F.3d at 296.

3

No. 10-60096

Title VII prohibits an employer from discharging an employee on the basis of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  Where, as here, plaintiff alleges individual disparate treatment and there is *no* direct evidence of discrimination, the well-known burden-shifting framework, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), is employed.

"The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson*, 373 F.3d at 651 (quoting *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)) (internal quotations omitted). Under the burden-shifting framework, plaintiff must first establish a *prima facie* case by showing:  (1) she was a member of a protected class; (2) she applied, and was qualified, for the position in question; (3) she suffered an adverse employment action; and (4) the position remained open or was filled by someone outside the protected class.  *McDonnell Douglas*, 411 U.S. at 802-03.

Here, however, MDE does not contest whether Hervey established a *prima facie* case.  Therefore, a rebuttable presumption of intentional discrimination attaches and the burden of production shifts to MDE to provide a legitimate, nondiscriminatory reason for its adverse employment action.  *See id.* at 802-04; *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-20 (5th Cir. 2001).  This burden, however, is one of production, not persuasion; that burden remains with Hervey.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). MDE's burden requires the production of admissible evidence in support of its nondiscriminatory reasons.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

If MDE articulates a legitimate, nondiscriminatory reason, the intentional-discrimination presumption is rebutted.  *E.g.*, *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  The burden shifts back to Hervey to demonstrate MDE's reason was merely pretext for unlawful discrimination.  *Roberson*, 373 F.3d at 651.

No. 10-60096

If Hervey demonstrates MDE's justification was false or pretextual, this evidence, coupled with evidence of Hervey's *prima facie* case, may permit an inference of unlawful discrimination. *Reeves*, 530 U.S. at 148. Nonetheless, even where plaintiff provides some evidence of pretext, our court has held the "overall lack of any evidence of discriminatory intent" is sufficient to defeat plaintiff's claim. *E.g.*, *Price*, 283 F.3d at 724 (internal citation and quotations omitted); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372-73 (5th Cir. 2000); *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000)

"[I]f the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred", summary judgment may be appropriate. *Price*, 283 F.3d at 724 (quoting *Reeves*, 530 U.S. at 148). For summary-judgment purposes, at issue is whether Hervey presented sufficient evidence of pretext such that a reasonable jury could infer intentional discrimination—in other words, whether she created a genuine issue of material fact on that point. *See Rubinstein*, 218 F.3d at 399-400.

A.

As its legitimate, nondiscriminatory reason for Hervey's discharge, MDE advanced various reasons, including her: incompetence; failure to maintain a presence on campus and properly supervise teaching staff; and lack of leadership skills. The district court relied, *inter alia*, on MDE's detailed, unsworn position statement to the EEOC as evidence of MDE's legitimate, nondiscriminatory reasons. Hervey contends the court could not do so. We disagree.

"Documents presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use." *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985). Hervey did not object in district court to use of the position statement. To the contrary, she placed it in the record, by submitting it with her

response to the summary-judgment motion and by questioning Dr. Bounds about it at his deposition.

In the alternative, even assuming the court erred in relying on the position statement, the error was harmless. *See id.* The deposition testimony of Drs. Bounds and Buckley provides independent, admissible corroborating evidence of MDE's nondiscriminatory reasons for Hervey's termination.

B.

Alternatively, Hervey maintains she created a genuine issue of material fact on whether MDE's proffered reasons were pretext for unlawful discrimination. We again disagree.

1.

Hervey does *not* contend Dr. Bounds or Dr. Buckley acted with unlawful discriminatory animus towards her when terminating her. For the reasons that follow, and based upon our *de novo* review of the summary-judgment record, Hervey did *not* create a genuine issue of material fact on whether MDE's legitimate, nondiscriminatory reasons are false or pretextual, and, therefore, has failed to defeat summary judgment. *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 350-51 (5th Cir. 2001); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405 (5th Cir. 1999) (concluding evidence insufficient to survive summary judgment regarding discriminatory-termination claim where evidence too speculative and too reliant on isolated incidents); *Rubinstein*, 218 F.3d at 400 (upholding summary judgment for employer even where *some* evidence of pretext, because *overall* lack of evidence of discriminatory intent). Along that line, Hervey fails to rebut each nondiscriminatory reason advanced by MDE. *See Wallace*, 271 F.3d at 220.

At the pretext stage, the proper inquiry is whether MDE's perception of Hervey's performance, whether accurate or not, was the reason for her discharge. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). As

No. 10-60096

discussed, to defeat summary judgment, Hervey bears the burden of showing pretext, such that a reasonable jury could infer that MDE's reason for discharge was discriminatory. *See id.* As is more than well known, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden on a motion for summary judgment". *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

As an initial matter, and as the district court ruled, Hervey failed to contest or adequately rebut each nondiscriminatory reason advanced by MDE. MDE's nondiscriminatory reasons that Hervey failed to rebut include: her failure to maintain a presence on campus, including the day of the student protest; her lack of oversight of administrative and instructional staff; her failure to intervene after declining student grades; and her literacy problems.

In response to MDE's asserted reason that she failed to maintain campus presence, Hervey relies on conclusory allegations, without supporting evidence, to claim she was *not* frequently absent and did maintain a presence on campus and properly supervise teachers. Instead of producing evidence to refute MDE's assertion, Hervey focuses on the lack of evidence produced by MDE about her absentee rate. The problem with this assertion rests with the scope of MDE's burden: as discussed *supra*, it is only of production, not persuasion. *See Burdine,* 450 U.S. at 260 (noting defendant "bears only the burden of *explaining* clearly the nondiscriminatory reasons for its actions") (emphasis added).

As to the protest, Hervey's conclusory allegations that she tried to stop the protest before it happened and was present on campus that day are insufficient.

Additionally, as the district court ruled, Hervey failed, for defeating summary judgment, to adequately rebut MDE's assertion that her discharge was due to lack of oversight of administrative and instructional staff. Hervey claims she has no way of responding because MDE did not explain exactly how she failed to oversee staff. Also, she contends there was no drop in student grades

and, therefore, no way for her to review teacher-competency issues. Again, Hervey's responses are insufficient to create a genuine issue of material fact: subjective beliefs of discrimination cannot be the basis for judicial relief.

Similarly, Hervey failed to create a genuine issue of fact on whether her literacy problems were pretext for discrimination. Once again, she responded with a subjective and conclusory allegation that there was no evidence of such problems. Again, bare allegations of racial discrimination are insufficient to defeat summary judgment. Moreover, as the district court found, she impliedly admitted to literacy problems in her response to MDE's summary-judgment motion when she stated there was "no evidence literacy problems warranted termination".

Hervey contends MDE's assertion that she was incompetent was pretext because she received a "meet expectations" score on her performance review and no disciplinary actions had been taken against her during her employment. That response, however, does not show MDE's reason was pretext for unlawful discrimination. Again, MDE's belief in the underlying facts supporting its adverse employment decision, whether accurate or not, is sufficient to constitute a legitimate, nondiscriminatory reason for its decision. *See Laxton*, 333 F.3d at 579.

In other words, taking Hervey's assertions as true, she does *not* present sufficient evidence to defeat summary judgment, regarding whether she was performing her job at a level at which there could be no legitimate, nondiscriminatory reason for her termination. Not having received disciplinary actions and meeting the minimum level of expectation is not dispositive of Hervey's job performance. In short, she fails to create a genuine issue of material fact on whether MDE believed Hervey was not performing her job at the level necessary to maintain the desired educational environment.

No. 10-60096

Further, Hervey cannot defeat summary judgment based on her contention that MDE incorrectly perceived her performance concerning an inappropriate student/teacher relationship, teacher evaluations, and racial tension on campus. In that regard, MDE relied on her failure to respond to an inappropriate relationship between a teacher and student. The summary-judgment record supports that: Hervey knew the student was going home with the teacher after school; and Hervey was aware of the relationship and failed to take appropriate action, in spite of a clear duty to respond. Refusing to respond to an inappropriate student/teacher relationship, simply because it was happening after school hours, is evidence, for summary-judgment purposes, of Hervey's incompetence as Secondary Principal. Although Hervey claims she attempted to report the problem, Dr. Bounds was never made aware of her efforts until this action ensued. Again, Hervey failed to create a genuine issue of fact on whether this reason was pretext for unlawful discrimination.

Similarly, MDE interpreted Hervey's partial completion of teacher evaluations as failing to maintain a presence and properly supervise teaching staff. Hervey submitted her evaluations in response to the summary-judgment motion. Many of them are not fully completed, and MDE relied on these incomplete evaluations in its termination decision. Again, it is of no consequence that MDE's interpretation of the incomplete evaluations could have been inaccurate. *See Laxton*, 333 F.3d at 579.

As another legitimate, nondiscriminatory reason for termination, MDE also advanced Hervey's failure to respond to the student protest within a reasonable time after its occurrence. Hervey explained her slow response was a result of letting the students blow off steam. All of these reasons relied on by MDE are its perception of the underlying facts. Again, an incorrect belief in the underlying facts may constitute a legitimate, nondiscriminatory reason for an adverse employment decision. *Id.*

9

No. 10-60096

As for the racial tension on campus, and as the district court held, such tension did *not* create a genuine issue of material fact on claimed intentional discrimination. Hervey devoted most of her briefs in our court discussing racial problems on campus, but such problems do not create the requisite genuine issue of material fact on whether Drs. Bounds and Buckley terminated her "because of" her race. 42 U.S.C. § 2000e-2(a)(1).

2.

In that regard, our court has cited with approval the "same actor" inference. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). This inference is premised on its hardly making sense for an employer to hire employees from a group against which it bears racial animus and then turn around and fire them once they are on the job. *See id.* (citing *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)).

The district court refused to apply this inference on the ground that Dr. Buckley, who is black, made the recommendation to terminate Hervey's employment. "The fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference." *Id.* In addition, Dr. Bounds was *involved* in both the decision to hire and fire Hervey; he approved her appointment as Secondary Principal as well as her termination.

Accordingly, an inference of lack of intentional discrimination is appropriate. It, of course, is not dispositive. The above-stated reasons are.

C.

Finally, Hervey contends she produced a genuine issue of material fact of a cat's-paw situation (employer's decision influenced by other individuals harboring racial animus, the term being derived from the fable regarding a monkey's using a cat's paw to remove chestnuts from a fire: "one used by another as a tool". MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 181 (10th ed. 2001). Review of another circuit's decision concerning this theory is pending in

No. 10-60096

the Supreme Court. *Staub v. Proctor Hosp.*, 560 F.3d 647 (7th Cir. 2009), *cert. granted*, 130 S. Ct. 2089 (2010)).  She relies on this theory on the claim that the ultimate decision-makers, Drs. Bounds and Buckley, acted under the influence of teachers and staff who exhibited discriminatory animus towards her.  We again disagree.

"To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions:  (1) that a co-worker exhibited [racial] animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decision-maker." *Roberson*, 373 F.3d at 653 (internal citations and quotations omitted).  For the reasons that follow, and based on our *de novo* review, Hervey fails to impute discriminatory animus to the decision-makers under the cat's-paw theory because she presents no genuine issue of material fact on whether:  (1) her co-workers exhibited discriminatory animus, and (2) Drs. Bounds and Buckley acquiesced to the influence of teachers and staff who allegedly sought Hervey's termination because of her race.

1.

Regarding the first inquiry, Hervey maintains:  Collier, Moulds, and Parker, three white teachers, encouraged the student protest in order to have her terminated because of her race; these three teachers wanted her terminated for hiring four black teachers, two of whom were not proficient in sign language, despite teachers' having been hired in the past who could not sign; Collier stated that Hervey hired black teachers who were less qualified because Hervey "felt that we were a black school more than a white school"; a student, Campbell, stated Parker expressed an intention to see Hervey, and the teachers she hired, terminated; Parker stated that Hervey "would have trouble with white people sometimes," and that Parker "didn't like the fact that [Hervey] had cliques" that consisted of "groups of black people".

11

No. 10-60096

Based on our *de novo* review of the summary-judgment record, Hervey has failed to create a genuine issue of fact on whether her co-workers harbored racial animus towards her and wanted her terminated *because of* her race. *See Rubinstein*, 218 F.3d at 400. To the contrary, for summary-judgment purposes, the evidence shows these teachers were aware of racial tension at school, and some students were angry about the hiring of two teachers who were not proficient in sign language. Collier and Parker's comments were not related to the employment decision at issue nor is there evidence tending to show they were made proximate in time to the adverse employment decision. Many of these statements were made in their depositions *after* that decision. Moreover, even if Collier, Moulds, and Parker expressed a desire to see Hervey terminated, there is no genuine issue of material fact on whether they wanted her terminated *because of* her race. Therefore, the cat's-paw theory is *not* applicable.

2.

In the alternative, regarding the second prong for that theory, Hervey contends: Collier, Moulds, and Parker exerted influence over the ultimate decision-makers because Dr. Buckley knew of racial tension between them and Hervey. Again, based upon our *de novo* review of the summary-judgment record, there is no genuine issue of material fact regarding such a position.

Although Hervey produced evidence tending to show Drs. Bounds and Buckley were aware of racial tensions at school, there is no evidence they (the decision-makers) knew of the alleged racial animus of Collier, Moulds, and Parker and acted upon that basis in their employment decision. In support of her contention that the decision-makers were influenced by teachers who exhibited racial animus, Hervey maintains: Dr. Buckley testified she received teacher complaints regarding Hervey and took those complaints into consideration in deciding whether to recommend Hervey's termination, and at least one complaint said Hervey was causing racial problems at school; Drs.

No. 10-60096

Bounds and Buckley were aware Collier, Moulds, and Parker were encouraging the protest because they wanted Hervey terminated because of racial tensions on campus; Dr. Buckley admitted she took the protest into consideration in recommending Hervey's firing and Dr. Bounds relied on Dr. Buckley's recommendation in making the ultimate decision to terminate Hervey; and she repeatedly told Drs. Bounds and Buckley the white teachers wanted to have her fired, but they did nothing.

As the district court held, and pursuant to our *de novo* review of the summary-judgment record, there is *no* genuine issue of material fact whether either Dr. Buckley or Dr. Bounds was aware of racial animus among teachers and made a decision on that basis. With regard to their knowledge of racial animus among teachers, Hervey relies on conversations with Drs. Bounds and Buckley where Hervey expressed her opinion that Collier, Moulds, and Parker were trying to have her terminated because of her race. Needless to say, simply because Hervey expressed that opinion to Drs. Bounds and Buckley does not create a genuine issue of material fact on whether they knew such racial animus existed.

There is no evidence demonstrating Dr. Buckley or Dr. Bounds spoke to these teachers or were aware of any actual animus. Hervey has shown merely the ultimate decision-makers were aware of racial tension at school, and took the protest into account in making the employment decision. Drs. Bounds and Buckley's deposition testimony offers no indication they were privy to the teachers' animus and does not tend to show Hervey was terminated *because of* her race.

In any event, our court has held such comments to be mere stray remarks where the speaker had no influence over the decision-making process. *See Wallace*, 271 F.3d at 223. These three teachers did not participate in the decision to terminate Hervey, and Hervey has not produced *any* evidence to

13

No. 10-60096

show they "possessed [the requisite] leverage or exerted influence" over the ultimate decision-makers. *Roberson*, 373 F.3d at 653. In sum, these statements were not made by any individual with authority over the employment decision at issue.

Based on our review of the summary-judgment record, in the light most favorable to Hervey, she has also failed to establish a genuine issue of material fact on this second prong for the cat's-paw theory. *See, e.g.*, *Price*, 283 F.3d at 724-25 (affirming summary judgment where plaintiff failed to produce sufficient evidence from which factfinder could infer racial discrimination); *Roberson*, 373 F.3d at 655 (same); *Rubinstein*, 218 F.3d at 400 (same). As stated, it is not applicable.

### III.

For the foregoing reasons, the judgment is AFFIRMED.