# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 3, 2011

No. 10-60410

Lyle W. Cayce
Clerk

STEVE E. LACROIX, et al.,

Plaintiffs-Appellants.

v.

MARSHALL COUNTY, MISSISSIPPI, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:07-CV-119, 3:08-CV-92

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Steve and Kellie LaCroix challenge the district court's dismissal of ninety claims they filed against the Board of Supervisors of Marshall County, Mississippi. We hold that the district court did nor err in dismissing their claims, the great majority of which are barred by the doctrine of res judicata. The balance of the claims fail to state a claim upon which relief may be granted. Accordingly, we affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60410

I.

The LaCroixs bring a number of claims against the Marshall County Board of Supervisors[1] arising from an alleged campaign of harassment against them in the summer of 2007. Their allegations against the Board can be grouped loosely into three categories: they complain (1) that the Board misused a public-nuisance statute and forced them to appear at a "sham" hearing; (2) that as result of their vigorous defense at that hearing, the Board wrongly denied license tags to them and their tenant under the guise of sanitation bills; and (3) that the Board denied them access to public records and held illegal closed meetings related to incidents (1) and (2). The LaCroixs filed two lawsuits relating to these incidents: one in state court and one in federal district court.[2] The principal question in this appeal is whether and which of the LaCroixs' federal claims are precluded by the state-court judgment. The answer turns on whether the federal lawsuit rests on the same underlying facts and circumstances as the state-court complaint.

The LaCroixs describe an ongoing animus between themselves and the Board that spanned several months in the summer of 2007. According to their state-court complaint, "all of the acts complained of herein occurred after a June 4, 2007 Notice to LaCroix and his wife" from the Board. The notice said that the Board had received complaints that the LaCroixs' residence was "in such a state of uncleanliness as to be a menace to the public health and safety of the

---

[1] The LaCroixs name a number of defendants in this suit: Marshall County, Mississippi, the Marshall County Board of Supervisors, and numerous County employees. Most of their claims appear specifically targeted at the Board of Supervisors and the individual supervisors in their individual capacities. The LaCroixs do not make clear which of their claims are against the County, the Board, or County employees in their individual capacities. Because we find that great majority of the LaCroixs' claims are barred, we need not disambiguate. This opinion refers to the entity defendants interchangeably as "the Board" and "the County."

[2] The LaCroixs actually filed three lawsuits against the County stemming from the same series of incidents: one in state court and two in federal court. The federal lawsuits were consolidated into one.

2

No. 10-60410

community." Thus, the Board would hold a hearing pursuant to a Mississippi public-nuisance statute, which allows a so-called "clean up" for a property deemed a menace to public health and safety. When the County performs such a "clean up," the statute allows it to place a lien on the property to cover its costs. Accordingly, the Board also notified the LaCroixs' mortgage lender, AmSouth Bank, of the impending hearing.

The hearing occurred on July 2, 2007. According to the LaCroixs, it became clear at the hearing that the Board's threatened "clean up" was a ruse. They allege that the Board used the public-nuisance statute as a pretext to talk to them about an unpermitted double-wide trailer on their property at 357 River Ridge in Byhalia, Mississippi. The LaCroixs, angered by allegations that their home was a menace to public health and safety, assumed what they refer to a "defensive posture." The record shows that they brought their own court reporter to the public hearing and accused the Board of dragging them into "kangaroo court" under false pretenses.

Tensions between the LaCroixs and the County grew in the weeks following the hearing. On July 21, 2007, nineteen days after the hearing, the LaCroixs learned that the County had denied their tenant an automobile license-tag renewal due to unpaid sanitation bills at a property the LaCroixs owned at 372 River Ridge. (Mississippi law conditions receipt of a license plate on payment of all delinquent county garbage fees.[3]) The tenant paid the sanitation bill so that he could receive his license tags. Believing that the County violated Mississippi law when it collected the bill from his tenant, Steve LaCroix confronted a member of the Board. He demanded that the County refund the money to his tenant and seek to collect it directly from LaCroix. The supervisor refused his request.

---

[3] MISS. CODE ANN. § 19-5-22(4)(b).

3

No. 10-60410

This license-tag incident then spurred LaCroix to seek public records—including documents and notes from the Board's meetings— regarding both the nuisance hearing and the sanitation bills. He sent several letters to the Board requesting particular documents and meeting records. Still more tensions ensued. The Board believed that it had about a month to comply with LaCroix's records request, but LaCroix believed he was entitled to the records on demand. He appeared several times at the office of the clerk of the Board, "with tape recorder in plain sight," demanding to copy the records. Several times he was turned away but was promised he could copy the records later. In the end, LaCroix was allowed to copy most but not all of the records he requested. The clerk of the Board informed LaCroix that some of the materials he requested were not actually public records.

In state court, the LaCroixs argued that all of the County's summer 2007 actions were related. Their complaint alleged that all of the complained-of acts were "in retaliation for the defensive posture" the LaCroixs assumed in response to the County's nuisance allegations. In other words, their complaint alleged that the Board initiated a systematic campaign of harassment against the LaCroixs, caused by the LaCroixs' vigorous self-defense against the County's nuisance hearing. But now the LaCroixs claim that it has always been their intention to bring two separate lawsuits for entirely separate conduct.

The substantial overlap between the LaCroixs' two lawsuits belies their assertion that their lawsuits are for wholly separate conduct. In state court, the LaCroixs brought four kinds of claims against the county. They asserted (1) violations of Mississippi Code § 19-5-22 (which conditions receipt of car license tags on payment of outstanding garbage bills); (2) various claims under 42 U.S.C. § 1983 arising from the garbage-fee dispute, including abuse of process and due process violations; (3) violation of Mississippi's Open Meetings Act, Mississippi Code § 25-41-1; and (4) violation of Mississippi's Public Records Act,

4

No. 10-60410

Mississippi Code § 25-61-2. The LaCroixs' federal complaint, which numbers 145 pages and contains 90 claims, reasserts *all* of their state-court claims. However, unlike the state-court complaint, it also makes a number of claims related to the public-nuisance hearing itself.[4]

The County moved to dismiss the LaCroixs' federal complaint on a number of grounds. At the time the County moved to dismiss, the state-court suit was still pending. The County argued, inter alia, that the court should abstain from exercising federal jurisdiction because the LaCroixs' claims rested on state-law issues pending in state court. The County also moved to dismiss the claims on substantive grounds, arguing that the LaCroixs had failed to state a claim on which relief may be granted.

The district court granted the motion to dismiss, without prejudice. The court held that it would abstain from deciding the case under *Colorado River Water Conservation District v. United States*,[5] because the case presents "a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."[6] The district court reasoned that the LaCroixs' claims concerning the Mississippi Public Records Act "should be developed by Mississippi courts rather than federal courts."[7] The LaCroixs moved for reconsideration, informing the district court that the state court had granted summary judgment and that there was thus no reason for the court to continue to abstain. The district court then vacated its

---

[4] The federal lawsuit also added two new parties: plaintiff Kellie LaCroix, Steve LaCroix's wife, and defendant Kent Smith, counsel for the Board.

[5] 424 U.S. 800 (1976).

[6] *Id.* at 814.

[7] The court actually invoked various abstention doctrines, from *Pullman* abstention to *Colorado River* abstention to *Burford* abstention. We need not consider the correctness of the district court's application of these doctrines, though, because the court later vacated its abstention ruling.

5

No. 10-60410

dismissal order, but it also noted its belief that "issues of res judicata and collateral estoppel [had become] ripe" when the Mississippi Chancery Court entered final judgment in the LaCroixs' case.

When it first invoked res judicata, the district court noted that it had the power to dismiss the claims sua sponte, but it nevertheless invited the parties to brief the issue. After the parties submitted their briefing on res judicata, the district court again dismissed the case. The court dismissed all but one of the LaCroixs' ninety claims on September 30, 2009. Of the eighty-nine claims disposed of in the September order, the court dismissed the vast majority for failure to state a claim on which relief may be granted. The court only provided specific reasons for its dismissal of one of the eighty-nine: the legal malpractice claim against Kent Smith. As to the remaining eighty-eight claims, the court dismissed most of them without providing reasons, holding simply that "only two [of the claims] appear to apply under the facts of this case: due process and equal protection." Those due process and equal protection claims, the court held, "are barred by the dotrine of res judicata (claim preclusion), and by the related doctrine of collateral estoppel (issue preclusion)." The one claim that survived the September order was a due process claim involving a another license-tag denial, this one imposed in 2008 (after the conclusion of the state-court suit). The court dismissed that claim under Rule 12(b)(6) on April 13, 2010.

The LaCroixs now appeal from the district court's rulings on res judicata and its 12(b)(6) rulings.

II.

We consider first whether the district court erred in dismissing the LaCroixs' claims as res judicata.[8]

---

[8] The district court did not make clear which claims it dismissed as res judicata and which claims it dismissed because they do not "apply under the facts of this case." It said that only "two claims" applied to the facts of this case, due process and equal protection. But the

No. 10-60410

"The res judicata effect of a prior judgment is a question of law that we review de novo."[9]  To determine preclusive effects of state court judgment, a federal court must apply the law of the state from which the judgment emerged.[10]  A federal court must give a state-court judgment the same preclusive effect it would have under that state's law.[11]

## A.

Before we consider the merits of res judicata, we consider whether it was proper for the court to rule on the res judicata issue as it did.  "Generally, res judicata is an affirmative defense that must be pleaded, not raised sua sponte."[12]  There are two exceptions to this general rule.  The first, which applies to "actions

---

plaintiffs alleged a number of due process and equal protection claims involving different theories of liability.  Thus, we are not entirely sure which claims the district court dismissed for failure to state a claim, and which it dismissed under the doctrine of res judicata.

We would typically require more explanation from a district court dismissing claims under Rule 12 than the court gave here.  Indeed, "we have required that the district court explain its reasons in sufficient detail to allow this Court to determine whether the district court correctly applied the proper legal rule." *Davis v. Bayless*, 70 F.3d 367, 376 (5th Cir. 1995) (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 644 (5th Cir. 1992)).  This is because we have "little opportunity for effective review" when a district court's "reasoning is vague or simply left unsaid." *Id.* (citing *McIncrow v. Harris Cnty.*, 878 F.2d 835, 836 (5th Cir. 1989)).  Normally, then, the appropriate course of action would be to remand the case to the district court for "an illumination of the court's analysis through some formal or informal statement of reasons." *Id.*

That said, we find that remand is not necessary here.  We agree with the district court that any claims arising from the County's alleged campaign of harassment against the LaCroixs in the summer of 2007 are precluded by the state-court judgment.  Thus, it was not necessary for the district court to discuss in detail which claims are viable and which are not: they all arise from the same related series of transactions.  Thus, they are barred by the doctrine of res judicata.

[9] *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)).

[10] *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citing *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096–97 (5th Cir. 1995)).

[11] *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007).

[12] *Mowbray v. Cameron Cnty.,* 274 F.3d 269, 281 (5th Cir. 2001) (citing FED. R. CIV. P. 8(c)); *accord Warnock v. Pecos Cnty.,* 116 F.3d 776, 778 (5th Cir. 1997).

No. 10-60410

[that] were brought before the same court,"[13] does not apply here. "The other exception involves the situation in which all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata."[14]

This case presents an interesting scenario. The defendants did not specifically plead res judicata in their answer, as Rule 8(c) requires.[15] As the defendants point out, though, the defense was not available to them when they filed their answer because the state-court judgment had not yet become final. Thus, rather than pleading res judicata, which only inheres for final judgments, they asked the district court to dismiss the case on abstention grounds, pending resolution of the state-court claims. The district court granted their motion. Res judicata became an issue when the LaCroixs asked the district court to reconsider its abstention ruling in light of the state court's intervening final judgment.

We find that this case falls squarely within the second exception to the general requirement that res judicata be affirmatively pled: "all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata."[16] This exception to the pleading requirement is exemplified by our decision in *American Furniture Co. v. International Accommodations Supply*.[17] There, we held that the district court should have dismissed the case in light of

---

[13] *See Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980).

[14] *Carbonell v. La. Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985).

[15] FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata . . . .")

[16] *See Carbonell*, 772 F.2d at 189.

[17] 721 F.2d 478 (5th Cir. 1983).

8

a previous state-court adjudication, even though the defendant failed to specifically plead res judicata.[18]   The "record before us [was] replete with references to the state court proceedings," including "pertinent parts of the pleadings" and "an uncontroverted state of facts."[19]   Here, similarly, the record is replete with information about the state-court proceedings, and the relevant facts are uncontroverted.  The record contained everything the district court needed to rule on res judicata, including the entirety of the state-court complaint and the state trial court's final judgment.  There is also a lengthy published opinion from the Mississippi Court of Appeals explaining the procedural history of the LaCroixs' Mississippi case.[20]

Not only did the district court have everything it needed to rule on res judicata, but the LaCroixs also had ample opportunity to argue that an estoppel was inappropriate.  Indeed, such fair notice is the very reason for the general requirement that res judicata be pled as a defense.  As we noted in *American Furniture*, the Supreme Court has held that "'[t]he purpose of [requiring res judicata and collateral estoppel to be pled] is to give the opposing party notice of the plea of estoppel and the chance to argue, if he can, why the imposition of an estoppel would be inappropriate.'"[21]   Here, the district court invited briefing from both parties on res judicata before it dismissed any claims as precluded. The LaCroixs had ample notice that the district court was entertaining the res judicata issue as well as opportunity to argue against the imposition of an estoppel.  They submitted two separate briefs explaining their belief that their

_____

[18] *Id.* at 482.

[19] *Id.* at 481.

[20] *See generally LaCroix v. Marshall Cnty.,* Nos. 3:07-CV-119-B-A, 3:08-CV-92-B-A, 2009 WL 3246671 (N.D. Miss. Sept. 30, 2009).

[21] *Am. Furniture*, 721 F.2d at 482 (quoting *Blonder-Tongue Labs. v. Univ. Found.*, 402 U.S. 313, 350 (1971)).

claims were not precluded.  Thus, we hold that the district court did not err in considering preclusion issues sua sponte.

### B.

We now turn to the merits of res judicata.  The doctrine of res judicata under Mississippi law bars parties from litigating claims "within the scope of the judgment" of a prior action.[22]  "This includes claims that were made or *should have been made* in the prior suit."[23]  The Mississippi Supreme Court has identified several public-policy purposes for this doctrine: to "avoid the expense and vexation attending multiple lawsuits"; "conserve judicial resources"; and "foster reliance on judicial action by minimizing the possibilities of inconsistent decisions."[24]  The doctrine of res judicata applies when four "identities" are present: (1) the identity of subject matter; (2) the identity of the cause of action; (3) the identity of the parties; and (4) the identity of the quality or character of a person against whom a claim is made.[25]

We have previously found it useful when considering a res judicata defense under Mississippi law to consider the first and second identities—identity of subject matter and identity of cause of action—"in tandem."[26]  Identity of subject

---

[22] *Anderson v. LaVere*, 895 So.2d 828, 832 (Miss. 2004); *see also Dunaway v. W.H. Hopper & Assocs. Inc.*, 422 So.2d 749, 751 (Miss. 1982) (citation and internal quotation marks omitted) ("[T]he doctrine of res judicata bars litigation in a second lawsuit on the same cause of action of all grounds for, or defenses to, recovery that were available to the parties [in the first action], regardless of whether they were asserted or determined in the prior proceeding.").

[23] *LaVere*, 895 So.2d at 832 (emphasis added).

[24] *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So.2d 224, 232 (Miss. 2005).

[25] *Id.*

[26] *See N. Panola Sch. Dist.*, 461 F.3d at 589 ("Although Mississippi courts have not defined explicitly the identity of subject matter, they have defined the identity of cause of action. The identities are distinct but related, and as such, examination in tandem illustrates their distinctions more readily.").

matter refers, loosely, to the "substance" of the lawsuit.[27]   Identity of cause of action, for its part, "is the identity of the underlying facts and circumstances upon which a claim has been brought."[28]   Put differently, a "cause of action is a group of operative facts that entitles a petitioner to seek remedy in court."[29]

In this case, the identities of subject matter and cause of action are present.  The subject matter of this case is the same as the LaCroixs' state-court case: a series of alleged incidents between the LaCroixs and the Board in the summer of 2007.[30]   And as to cause of action, the "underlying facts and circumstances" in this case and the state-court case are the same.  The operative facts in both cases are: (1) the events surrounding the nuisance-statute hearing; (2) the license-tag denials imposed allegedly as retaliation for the LaCroixs' vigorous defense against the nuisance proceeding; and (3) the allegations regarding public records and open meetings relating to both incidents. The state-court complaint certainly differs from the federal complaint, which asserts ninety claims rather than the five asserted in state court.  It matters not: this kind of claim-splitting is precisely what the doctrine of res judicata seeks to prevent.[31]   What is important is that the factual allegations in both complaints are identical.

---

[27]  *Id.* (interpreting Mississippi case law and citing *Harrison,* 891 So.2d 224).

[28] *Black v. City of Tupelo*, 853 So.2d 1221, 1225 (Miss. 2003) (citing *Riley v. Moreland*, 537 So.2d 1348, 1354 (Miss. 1989)).

[29] *See LaVere*, 895 So.2d at 835.

[30] *See Black*, 853 So.2d at 1225 (finding unity of subject matter because "both suits pertain[ed] to alleged incidents with the Tupelo Police Department").

[31] *N. Panola Sch. Dist.*,  461 F.3d at 589 ("The requirement that the litigation 'involve the same claim premised upon the same body of operative fact as was previously adjudicated' comports with the prohibition against claim-splitting protected by res judicata." (quoting *Harrison*, 891 So.2d at 234).

No. 10-60410

The LaCroixs now argue that the federal and state lawsuits have different foci. They contend that the events surrounding the nuisance hearing were not the subject of the state lawsuit, but rather were presented as background to "show the character of the defendants." Their state-court complaint, however, tells a different story. It alleges a causal relationship between the nuisance hearing and the other incidents they complained of. Moreover, the fact that the LaCroixs reasserted all of their state-court claims in federal court belies their argument that they intended to file separate, concurrent lawsuits involving different portions of their dispute with the County. Finally, the LaCroixs' federal lawsuit alleges a number of conspiracy claims. This supports the district court's finding that the LaCroixs' allegations sound in an alleged campaign of related harassment by the County.

We have little trouble finding that the third and fourth identities—identity of parties and identity of the quality or character of the parties—are present between this case and the state-court case. As to the identity of the parties, the Mississippi Supreme Court has repeatedly held that strict identity is not required.[32] Although plaintiff Kellie LaCroix and defendant Kent Smith were not parties to the state-court case, they are in privity with, respectively, Steve LaCroix and the Board, for whom Smith worked.[33] As to "character of the parties," we find that this identity is satisfied as well. Kellie LaCroix's interests in this lawsuit are in step with those of her husband. The LaCroixs' pleadings indicate that both LaCroixs were subject to the allegedly unlawful administrative hearing, and both are affected by the license-tag denials. New

---

[32] *E.g.*, *Hill v. Carroll Cnty.*, 17 So.3d 1081, 1086 (Miss. 2009); *Little v. V & G Welding Supply*, 704 So.2d 1336, 1339 (Miss. 1997).

[33] *See LaVere*, 895 So.2d at 835 ("In order for res judicata to bar litigation of a claim in a second proceeding, the parties to the second action must have also been parties to the first action, or have been in privity with a party in the first action.").

No. 10-60410

defendant Kent Smith, like most of the defendants in this case, is an employee of the Board. He is thus the same "character" or type of defendant.[34]

In sum, we hold that it was not error for the district court to dismiss the LaCroixs' claims as res judicata. Although the defendants did not specifically plead res judicata as an affirmative defense, there was no prejudice to the plaintiffs, who had ample notice and opportunity to argue against an estoppel. And the district court correctly found that the state-court judgment precludes the LaCroixs' claims, which rest on the same set of facts and circumstances as their state-court claims.

## III

We now consider the remaining two claims that the district court dismissed for failure to state a claim upon which relief may be granted. We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6).[35] The "'complaint must contain sufficient factual matter', accepted as true, to 'state a claim to relief that is plausible on its face.'"[36] "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"[37]

---

[34] *Cf. EMC Mortg. Corp. v. Carmichael*, 17 So.3d 1087, 1091 (Miss. 2009) ("[W]e think it obvious that the "quality and character" of EMC and UCLC are the same for res judicata purposes, as they are both mortgage lenders." (citing *Little*, 704 So.2d at 1339–40)).

[35] *SEC v. Cuban*, 620 F.3d 551, 553 (5th Cir. 2010).

[36] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[37] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The LaCroixs' filed their federal complaint in 2007, well before the Supreme Court's decision in *Iqbal* made clear that Twombly's pleading rule applied beyond the antitrust context. *See generally Iqbal*, 129 S. Ct. 1937 (applying the pleading standard articulated in *Twombly* to plaintiffs' discrimination claims). However, we need not wrestle with whether they should be allowed to amend their complaint. Their claims fail even under the more lenient pleading standard articulated in *Conley v. Gibson*, 355 U.S.

No. 10-60410

Before turning to each claim, we consider as a threshold matter the LaCroixs' argument that the district court erred in dismissing their claims without affording them an opportunity to amend their complaint. Of course, it has been our general rule that "a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend."[38] However, the district court need not permit futile amendments.[39] Here, the district court did not err by failing to invite the LaCroixs to amend their complaint. The LaCroixs have conceded the lack of numerous facts that are essential to their claims. For instance, as to their attorney malpractice claim, they continue to concede that an essential element of their claim—an attorney-client relationship—was missing. Thus, permitting them to amend their complaint would be futile.

A

The district court did not err when it dismissed the LaCroixs' claim for legal malpractice against Kent Smith. Under Mississippi law, there are three elements to a claim for legal malpractice: "(1) the existence of an attorney-client relationship; (2) negligence on the part of the lawyer in handling the affairs of the client which have been entrusted to the lawyer; and (3) proximate cause of the injury."[40] The district court dismissed the LaCroixs' legal-malpractice claims because they did not demonstrate the existence of an attorney-client

---

41 (1957).

[38] *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam).

[39] *McCullough v. Tex. Dep't of Criminal Justice*, No. 95-20475, 1995 WL 696758, at *1 (5th Cir. Oct. 18, 1995); *see also Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) ("Pro se prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief.").

[40] *Pierce v. Cook*, 992 So.2d 612, 617 (Miss. 2008) (citing *Hickox v. Holleman*, 502 So.2d 626, 633 (Miss. 1987)).

No. 10-60410

relationship. This ruling has intuitive appeal: Smith represented the County, the LaCroixs' *adversary*, not the LaCroixs.

The district court's ruling is also correct on a close scrutiny of the complaint. The LaCroixs did not plead facts sufficient to plausibly establish that they entered into an attorney-client relationship with Kent Smith. The Mississippi Supreme Court has explained that an attorney-client relationship arises when:

> (1) A person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and (2)(a) The lawyer manifests to the person consent to do so, or (b) fails to manifest lack of consent to do so, knowing that the person reasonably relies on the lawyer to provide the services, or (c) a tribunal with power to do so appoints the lawyer to provide the services.[41]

We agree with the district court that the LaCroixs' complaint does not demonstrate a manifested intent for Smith to become their lawyer. The LaCroixs now argue that their claims sound in professional negligence, not "attorney malpractice." But they fail to recognize that "attorney malpractice" *is* a claim for lawyers' professional negligence. We are aware of no other cause of action under Mississippi law that gives a plaintiff standing to sue *someone else's* attorney for negligence.[42] Accordingly, the LaCroixs' legal malpractice claim must fail.

B.

The district court also did not err when it dismissed the LaCroixs' due process claim related to a 2008 denial of a car license tag. Mississippi law

---

[41] *Singleton v. Stegall*, 580 So.2d 1242, 1244 n.2 (Miss. 1991) (quoting RESTATEMENT OF LAW GOVERNING LAWYERS § 26 (prelim. draft 1990)).

[42] The remaining claims against Smith in his general capacity as an employee of the County rise and fall with the LaCroixs' claims against the County and its other employee-defendants. They are barred by res judicata.

No. 10-60410

conditions receipt of a car license tag on current payment of sanitation fees.[43] Specifically, the relevant statute provides: "The board of supervisors may notify the tax collector of any unpaid fees assessed . . . .  Payment of all delinquent garbage fees shall be deemed a condition of receiving a motor vehicle road and privilege license tag."[44] The statute provides a notice-and-hearing procedure the County must follow before notifying the tax collector of the delinquency.[45] The LaCroixs argue that the County violated their due process rights by failing to follow this statutorily prescribed procedure.

In order to survive a 12(b)(6) motion on a procedural due process claim, a plaintiff must allege facts sufficient to show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process.[46] We have no problem finding that the LaCroixs asserted a cognizable property interest in their car license tags.  The Supreme Court has repeatedly held that a person receiving "benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process."[47] Mississippi law requires payment of sanitation bills as a condition to receiving a car license tag.  Thus, a license tag is a statutory benefit received "under statutory and administrative standards

---

[43] *See* MISS. CODE ANN. § 19-5-22(4).

[44] *Id.* § 19-5-22(4)(a)–(b).

[45] *Id.* § 19-5-22(a).

[46] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n.3 (1985); *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

[47] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

No. 10-60410

defining eligibility." The LaCroixs alleged a protected interest in continuing to receive those benefits.

Although the LaCroixs allege a protected property interest in their license tags, they fail to allege a *deprivation* of that property interest. Indeed, in their response to the County's motion to dismiss, the LaCroixs readily conceded that they were "not denied tags" and were never made to pay the amounts the County alleged they owed. The LaCroixs argue that a period of eight days lapsed between their initial request to renew their license tags and the County's final approval. They argue that this temporary deprivation amounts to a violation of their due process rights. The district court held that this did not amount to a "deprivation" under the Supreme Court's decision in *Mathews v. Eldridge*[48] and its progeny. We agree. This Court has long held that the minimal process provided by the Supreme Court's decision in *Mathews* is "notice of the reasons for a *proposed deprivation* and some opportunity to respond to the substance of the allegations before a *final deprivation* occurs."[49] This explanation is instructive here: as pleaded, the LaCroixs were notified of a proposed deprivation when they applied to renew their license tags. But after the County afforded them an opportunity to be heard, it granted their renewal request some eight days later. Thus, we need not consider whether the notice or hearing they received was constitutionally adequate. There was no final deprivation of a

---

[48] 424 U.S. 319 (1976).

[49] *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993) (citing *Eguia v. Tompkins*, 756 F.2d 1130, 1139 (5th Cir. 1985)) (emphasis added).

protected property interest,[50] and, accordingly, the LaCroixs failed to state a due process claim upon which relief may be granted.

## VI.

In sum, we hold that the district court did not err in dismissing the LaCroixs' ninety claims against Marshall County, Mississippi, and its Board of Supervisors. The great majority of their claims are barred by the doctrine of res judicata. As to the claims that are not precluded, the LaCroixs failed to state a claim upon which relief may be granted. Accordingly, we affirm the judgment of the district court.

---

[50] The essence of the LaCroixs' license-tag due process claim appears to be that Mississippi failed to follow its own statutory procedures for denying renewal of a license tag. However, we have held that a state's own statutorily prescribed process is only relevant to our federal due process analysis to the extent it creates a property interest in a government benefit. *See Eguia*, 756 F.2d at 1137 n.11 ("We are convinced, however, that in a properly focused due process analysis the state's promises play a role only in the determination of whether a property interest subject to the protection of due process of law exists." (citing *Bishop v. Wood*, 426 U.S. 341, 344–46 (1976); *Perry v. Sindermann*, 408 U.S. 593, 599–603 (1972)).